Argued October 25, 1976, affirmed February 17, 1977

# BLACK, *Appellant,*
## *v.*
# FUNDERBURK et vir, *Respondents.*

## (No. 23082, SC P-2490)

560 P2d 272

Milo Pope, Milton-Freewater, argued the cause for appellant. With him on the brief were Gooding & Susak, La Grande.

Alex M. Byler, of Corey, Byler & Rew, Pendleton, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and O'Connell,* Holman, Tongue, Howell and Bryson, Justices.

DENECKE, C. J.

---

*O'Connell, J., term expired January 3, 1977.

**DENECKE, C. J.**

Plaintiff brought this action to recover damages for personal injuries incurred in an automobile collision. The defendants filed a supplemental answer alleging that the defendants' insurer had paid plaintiff and she had released defendants from any claims. Plaintiff replied that she did not intend to release defendants from their liability for her personal injuries. Upon defendants' motion, the trial court tried separately, without a jury, the effectiveness of the release. The court held it released both defendants. Plaintiff appeals.

■ Plaintiff first assigns as error the trial court's ordering the release issue tried separately.

ORS 11.060 provides for separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Defendants' motion for a separate trial was grounded upon the proposition that a finding that the defendants had been released would obviate the necessity of trying the issues of liability and damages. Furthermore, defendants contended that if a separate trial were not held, the fact that defendants carried insurance would be disclosed to the prejudice of the defendants on the issues of liability and damages. In discussing ORS 11.060 we stated:

> "* * * Inasmuch as the trial court's rulings concern the administration of the business of the trial court, the appellate courts grant the trial courts a wide range of discretion in making such rulings. * * *." *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 356, 546 P2d 1065 (1976).

Appellate courts have frequently affirmed the rulings of trial courts granting separate trials on the issue of the effectiveness of a release obtained by an insurance company. Annotation, Propriety of Separate Trials of Issues of Tort Liability and of Validity and Effect of Release, 4 ALR3d 456 (1965). The grounds stated by defendants are in accordance with the

[ 159 ]

provisions of the statute, — expedition, economy and the avoidance of prejudice. The trial court did not err in ordering separate trials.[1]

■  The plaintiff also contends the trial court erred in ruling that the release barred plaintiff. A decision on this issue requires a statement of the facts.

On April 30, 1973, the plaintiff collided with a car driven by defendant Lynette Funderburk. The plaintiff hit her head on the window causing her head and neck to be hurt. The car driven by the plaintiff was owned by Black Forest Construction Co., a corporation owned by plaintiff and her husband. Plaintiff was insured by Oregon Auto. The defendants were insured by Unigard.

On May 2nd a Unigard adjuster mailed an accident report form to plaintiff which she filled in and returned. Unigard replied that if plaintiff had any medical bills she should forward them to Unigard and that it would be agreeable, if she wished, to have her insurance company handle the settlement. Plaintiff replied that she would rather have her insurance company act for her.

The adjuster agreed with Oregon Auto to settle the property damage claim by discounting the damage 10 per cent because of plaintiff's contributory negligence. In late July the adjuster talked to plaintiff, but she stated she had been ill and did not want to talk about her claim. After later unsuccessful attempts, the adjuster was able to talk by telephone with plaintiff in October 1973. He testified she said she had been very ill with pneumonia and there were some doctor bills incurred. Plaintiff was unable, however, to show whether the accident caused her other illnesses. The parties agreed upon paying $90 on the deductible for the car and an additional $60 which represented a $10 doctor bill and a $50 balance for any future medical bills.

---

[1]The plaintiff did not request that a jury try the release issue.

The adjuster had his secretary send plaintiff a draft for $150, payable to the construction company and plaintiff. On the face of the draft it stated, in essence, that it was in settlement of all claims against Michael Funderburk. On the reverse it stated that the endorsement would constitute acceptance of payment of the claim stated on the face. Plaintiff endorsed the draft and deposited it in the construction company's account about October 18, 1973. Plaintiff was the bookkeeper for the construction company and processed its checks.

Plaintiff testified that by October 18, 1973, she had incurred medical and hospital expenses in the amount of $2,500 and had other expenses in the amount of $400. The bills of five different doctors were included in this amount as well as three hospitalizations. The construction company paid the medical and hospital bills.

Plaintiff knew her insurer, Oregon Auto, had personal injury protection insurance for her which would pay the medical and hospital expenses. She never submitted any bills to Oregon Auto or to Unigard. She testified she had no reason for not doing so.

Plaintiff testified that her first hospitalization in June was because of the flu as well as the collision. She also admitted she had seen one of the five physicians on a medical problem not connected with the collision. Plaintiff testified that although she thought she had told the physicians who treated her that she believed her condition was caused by the collision, she was not certain she had done so.

At trial plaintiff testified she did not know the effect of endorsing the draft; she was under the impression that the $50 paid in addition to the property damage was to "be applied to my doctors' bills."

The trial court gave a written opinion in which it stated:

"* * * Plaintiff understood the terms of the settle-

ment, and she was aware that she was releasing her claims against the Defendants when she endorsed the draft and accepted its proceeds. The Court finds that at the time of the endorsement of the draft, October 19, 1973, Plaintiff had not attributed her medical problems (beyond the bump to her head) to the accident described in her Complaint. The best evidence of this being: (a) The fact that Plaintiff had not presented any medical claims to her insurance company, although she was aware of the policy provisions for the payment of these claims; (b) She had not presented any medical claims to Uniguard [sic] Insurance Company, although being invited to do so in writing; and, (c) She personally saw that her medical bills were paid by Black Forest Construction Company. * * *."

The evidence as stated by the trial court and as stated above in this opinion supports the findings and decision of the trial court.

■ The plaintiff also contends that the endorsement of the draft does not, in any event, release the defendant Lynette Funderburk because the draft only refers to claims against "Michael Funderburk." Michael Funderburk was the owner of the car and plaintiff alleged he was responsible for Lynette Funderburk's negligence. The adjuster testified that when Unigard took a release by draft only, without a separate release document, it only stated the named insured, in this case, Michael Funderburk.

The rule in Oregon is that whether a release of one tortfeasor releases another tortfeasor depends upon the intention of the parties. *Cranford v. McNiece,* 252 Or 446, 450 P2d 529 (1969).

The trial court made no special findings on this issue but generally found that Lynette Funderburk, as well as Michael Funderburk, was released. There is evidence to support a finding that plaintiff's intention was to release both defendants. The accident report filed by plaintiff indicates plaintiff believed her claim was against Lynette Funderburk. In her letter to Unigard she referred to Lynette Funderburk as Uni-

gard's client. There was no testimony that plaintiff intended to release Michael but not Lynette Funderburk.

Affirmed.