Argued and submitted April 2, the decision of the Court of Appeals reversed and the judgment of the circuit court affirmed November 22, 1991, plaintiffs' petition for reconsideration allowed March 24, 1992
See 313 Or 339 (1992)

Adam Charles BREMNER,
by and through
his guardian *ad litem* Deborah A. Bremner,
Deborah A. Bremner and Brian G. Bremner,
*Respondents on Review,*

*v.*

Ellen CHARLES, M.D.,
Joseph H. Diehl, M.D.,
and Pendleton Community Memorial Hospital,
*Petitioners on Review.*

(CC 86-163; CA A45607;
SC S37713, S37668, S37674)

821 P2d 1080

Jeffrey S. Eden, of Cooney, Moscato & Crew, P.C., Portland, argued the cause and filed the petition for petitioner on review Ellen Charles, M.D.

Mildred J. Carmack, of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the petition for petitioner on review Joseph H. Diehl, M.D.

Lindsey H. Hughes, of Hallmark, Keating & Abbott, Portland, argued the cause and filed the petition for petitioner on review Pendleton Community Memorial Hospital.

Jossi Davidson, of Gracey & Davidson, Silverton, argued the cause and filed the response brief for respondents on review.

UNIS, J.

## UNIS, J.

In this medical negligence case, we are asked to resolve two issues: first, whether the trial court erred in ordering a bifurcated trial on the issues of liability and damages; and, second, whether the trial court erred when it prohibited plaintiff Adam, a brain-damaged child who was then three years old, from being in the courtroom for a brief appearance during the liability phase of the trial.

Adam could not comprehend the proceedings, meaningfully participate in them, or assist his lawyers. He was represented by his mother as guardian *ad litem*. As Adam's guardian *ad litem* and on her own behalf, Adam's mother[1] filed a complaint alleging negligence of three defendants who were involved in different stages of mother's pregnancy and Adam's birth. Those defendants are Dr. Charles, mother's obstetrician during her pregnancy with Adam; Dr. Diehl, who attended mother during her labor and delivery; and Pendleton Community Memorial Hospital, where Adam was delivered. Plaintiffs alleged that Adam suffered permanent brain damage as a result of defendants' negligence. According to the complaint, Adam will continue to suffer mental retardation, seizures, inability to control his limbs, and other bodily dysfunctions.

Several weeks before trial, the parties attended an informal meeting to discuss, among other things, evidentiary stipulations. During the course of that meeting, plaintiffs advised defendants that they hoped to conclude their case in chief with one week of testimony. Defendants scheduled their own witnesses based on this tentative plan. On the morning of trial in Pendleton, plaintiffs advised defendants and the trial court that plaintiffs would require "an extra day or maybe a day-and-a-half" beyond their original estimate to present their case in chief. Plaintiffs submitted to defendants and to the trial court a list of witnesses whom plaintiffs intended to call, identifying each witness as either a "liability" or a "damages" witness.

On being advised that plaintiffs would require additional time, defendants moved to bifurcate the trial and to

---

[1] Plaintiff Brian Bremner, Adam's father, was voluntarily dismissed by the court on stipulation.

allow the parties first to try the liability portion of the case and then, if necessary, to try the matter of damages. Defendants contended that bifurcation would enable the parties to adhere to the original schedule so that their witnesses would not need to be rescheduled. Numerous medical experts, nearly all of whom were from out of town (some were from out of state) and needed to be flown in and out of Pendleton, had been scheduled in advance of trial.

The trial court allowed plaintiffs the time that they requested to respond to the motion to bifurcate. After considering their position, plaintiffs objected to bifurcation on two grounds: First, the jury might find for defendants on the liability issue in order to be released sooner; and, second, bifurcation would complicate their case because of the need to reschedule their witnesses.[2] On the basis of the arguments and representations made by both parties, the trial court, convinced that bifurcation of the liability and damages issues for trial by the same jury would "result in economy of time for everyone concerned," ordered bifurcation.

After that ruling, but before trial, defendants moved to exclude Adam from the courtroom in the liability phase, and the trial court reserved its ruling. Several days into plaintiffs' case in chief in the liability phase of the trial,[3] plaintiffs asked that the trial court allow Adam to enter the

---

[2] Specifically, plaintiffs' lawyer, in objecting, stated:

"One is that I think that it's only fair to assume that the jury * * *, when they were making a determination with regard to the liability aspect, they could * * * consider that if they found for the Defendants, they would be able to go home. Whereas if they found for Plaintiffs and in favor of any one or more of the Defendants on the liability issue, that they would then be required to come back and continue with more proceedings.

"Secondly, Plaintiffs' case would be substantially complicated in that our witnesses, as was shown at the pretrial conference, have been interspersed with liability and damage witnesses, and I frankly do not know — I know that there's one liability witness on Friday that has indicated * * * that was the date he could make it, I believe. And I don't, also, know if we would then be able to reschedule — reorder our witnesses so that we could get all of the liability case on within whatever time period that would take. And it would * * * take a lot of phone calling and so forth, to try to figure out."

1 Tr 29-30. In overruling plaintiffs' objection, the trial judge stated that he suspected there is "always some juggling in every trial" and that he did "not intend telling the jury when they go out that if they find a defense verdict, they don't have to come back."

[3] Plaintiffs' case consumed six days.

courtroom solely for a brief appearance to allow the jury to view him. The trial court, without ever seeing Adam, denied plaintiffs' request.

Following nearly three weeks of trial on the liability issue, the jury rendered a unanimous verdict for defendants. Judgment for defendants was entered. Plaintiffs appealed. The Court of Appeals reversed and remanded for a new trial, holding that the trial court erred in bifurcating the trial and in not allowing Adam to enter the courtroom for a brief appearance. *Bremner v. Charles*, 104 Or App 75, 799 P2d 188 (1990). We allowed review and now reverse the decision of the Court of Appeals.

■ We first address whether the trial court erred when it bifurcated the trial into a liability phase followed, if necessary, by the damages phase. We review the decision to bifurcate for abuse of discretion. *See Vander Veer v. Toyota Motor Distributors*, 282 Or 135, 144, 577 P2d 1343 (1978) (applying the standard). Because a trial court's ruling on a motion for bifurcation of issues concerns "the administration of the business of the trial court," the trial judge is granted broad discretion in making such rulings. *Black v. Funderburk*, 277 Or 157, 159, 560 P2d 272 (1977) (quoting *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 356, 546 P2d 1065 (1976)).[4]

ORCP 53B permits bifurcation of issues under certain specific circumstances:[5]

> "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or issues,

---

[4] *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 356, 546 P2d 1065 (1976), dealt with *former* ORS 11.050 and *former* ORS 11.060. Except for the elimination of the words "upon motion of any party" from ORCP 53B, ORCP 53B is the same as *former* ORS 11.050, and ORCP 53A is essentially the same as *former* ORS 11.060. *Black v. Funderburk*, 277 Or 157, 159, 560 P2d 272 (1977), dealt with *former* ORS 11.060.

[5] *See also* OEC 611(1), which states that the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth." "The Oregon Evidence Code shall be construed to secure fairness in administration [and] elimination of unjustifiable expense and delay * * * to the end that the truth may be ascertained and proceedings justly determined." OEC 102.

always preserving inviolate the right of trial by jury as declared by the Oregon Constitution or as given by statute."[6]

■ Under ORCP 53B, the trial judge may order a separate trial of any claim or of any separate issue or issues only (1) in furtherance of convenience, (2) to avoid prejudice, or (3) if conducive to expedition and economy.[7] A decision to bifurcate under ORCP 53B may be made by a trial judge, therefore, only as a result of an informed exercise of discretion on the merits of each case.[8] Bifurcation of issues for trial is not to be ordered routinely. A prerequisite to the exercise of discretion is that bifurcation will promote one or more of the purposes of the rule, *i.e.*, convenience, avoidance of prejudice, or conduciveness to expedition and economy.

■ In this case, the trial court's decision to bifurcate is in accordance with two of those purposes — convenience and expedition and economy. The bifurcation order permitted the parties to adhere to their original trial schedule in a complex,

---

[6] ORCP 53B was promulgated originally by the Council on Court Procedures on December 2, 1978, and was submitted to the Legislative Assembly at its 1979 Regular Session pursuant to ORS 1.735. Note preceding ORCP 1. ORCP 53B is based on *former* ORS 11.060, enacted in 1973, Or Laws 1973, ch 85, § 2, which is substantially similar to Rule 42(b) of the Federal Rules of Civil Procedure.

*Former* ORS 11.060, the statutory predecessor to ORCP 53B, was part of a bill recommended by the Oregon State Bar to authorize both consolidation of actions and separate trials of portions of a single action, at the discretion of the trial court. The proposal for the bill explained:

"Equally desirable to consolidation where appropriate is a means whereby a party upon motion may obtain a separate trial of any claim, counterclaim or issue pending in any suit or action. Frequently the trial of one separate issue is determinative and dispositive of the case, and such a trial of a segregated issue is often much less time consuming and less expensive to all the parties. A separate trial may result in the avoidance of substantial prejudice to a party."

Oregon State Bar, 1972 Committee Reports 198.

[7] Under FRCP 42(b), the federal counterpart to ORCP 53B, the presence of any one of these standards — convenience, avoidance of prejudice, and conduciveness to expedition and economy — is also sufficient to sustain an order of separation of trial in the exercise of informed discretion. *See* 5 Moore's Federal Practice ¶ 42.03[1]; Annot., *Propriety Of Ordering Separate Trials As To Liability And Damages, Under Rule 42(b) Of Federal Rules Of Civil Procedure, In Actions Involving Personal Injury, Death, Or Property Damage*, 78 ALR Fed 890, 897-98 (1986), and cases collected therein.

[8] The decision must be case specific. A routine order of bifurcation in all actions involving personal injury or death actions, for example, would be a practice at odds with the requirement that informed discretion be exercised. *See Lis v. Robert Packer Hospital*, 579 F2d 819, 824 (3d Cir), *cert den* 439 US 955 (1978) (stating principle as to FRCP 42(b)).

multi-party medical negligence action and obviated the rescheduling of numerous witnesses' appearances (most of whom were nonresident medical experts) and airplane flights.

Plaintiffs did not object to bifurcation on the ground that the issues of liability and damages were interwoven. In fact, on the list of witnesses which plaintiffs submitted to the trial court and to defendants, plaintiffs identified each witness as either a "liability" or a "damages" witness.[9] Nothing in the record suggests that bifurcation prevented plaintiffs from introducing damages evidence that was also related to liability. Although plaintiffs argued that bifurcation of the issues would complicate their case because of the need to reschedule their witnesses, plaintiffs did not request a continuance of the trial. Plaintiffs did not contend at trial that bifurcation in any way forced them to revise their trial strategy. In fact, plaintiffs did not begin the presentation of their evidence until four days after the bifurcation order occurred. Plaintiffs have not pointed to anything in the record that indicates that the bifurcation order improperly limited their efforts to prove their claims of negligence. Plaintiffs called, and testimony was received from, eleven medical witnesses[10] and two lay witnesses, in addition to the parties themselves.

Further, plaintiffs' objection to bifurcation on the ground that the jurors might find for defendants on the liability issue so that they could be released sooner reflects a purely speculative belief that the jurors would seek expediency rather than fulfillment of their sworn obligations as jurors. We reject such a contention, and there is nothing in the record to support it.

On this record, the trial court did not abuse its discretion and, therefore, did not err in ordering bifurcation.

We next address whether the trial court erred when it refused to allow Adam to be in the courtroom for a brief appearance during the liability phase of the trial in order to

---

[9] Plaintiffs indicated to the trial court an intention to call at least three expert witnesses who would testify only about damages.

[10] The eleven medical witnesses were two pediatricians, two obstetrician-gynecologists, a child neurologist, a neonatologist, a perinatologist, a pathologist, and three registered nurses. Eleven medical witnesses testified for defendants.

allow the jury to view him. In granting defendants' motion to exclude Adam from the courtroom during the liability phase of trial, the trial court stated that Adam could not "meaningfully participate in [the trial]," that Adam was "represented by his mother who's his guardian [*ad litem*] for the purposes of this trial," and that "the sole purpose of [an appearance] would be to prejudice the jury."

On only a few occasions has this court addressed a trial court's authority to exclude parties from a trial. In *Schneider v. Haas*, 14 Or 174, 175, 12 P 236 (1886), this court interpreted a statute that allowed the exclusion of a witness not to apply to parties:

> "The very right to prosecute a suit in court and to appear therein as a party carries with it, as a necessary incident, the further right to be present during the trial; * * * [the parties] cannot be deprived of it by the court against their will, when they are present, endeavoring to maintain it."

That principle was iterated in *Leson and Leson*, 293 Or 368, 370, 648 P2d 55 (1982), when this court held that a trial court lacked authority to exclude a father during custody proceedings when the trial court took the child's testimony.

Both *Schneider* and *Leson* emphasize that a party has a right to be present during trial. In *Leson*, however, this court stated that a party's right to be present at trial may be waived "by [the party] omitting and neglecting to attend" the trial. 293 Or at 370 (quoting *Schneider v. Haas, supra*, 14 Or at 175). The right of a party to be present during trial is implicitly stated in OEC 615, which provides:

> "At the request of a party the court may order witnesses excluded until the time of final argument, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person * * *."

The issues presented in this case, then, are (1) whether a party, who is available to attend the trial, has an absolute right to be present during the liability phase of a trial and, if not, (2) whether the trial court, on the facts of the record, erred in not allowing Adam to enter the courtroom

during the liability phase solely for a brief appearance to allow the jury to view him.[11]

Appellate courts from other jurisdictions frequently affirm the rulings of trial courts excluding disabled or incompetent plaintiffs from the liability phase of a bifurcated trial. The standard developed by many of those courts is that a plaintiff who is unable to comprehend, to meaningfully participate in the proceedings, or to assist his or her lawyer in the presentation of the case may be excluded from the liability portion of the trial if the trial court, in the exercise of informed discretion, determines that the party's presence would be unfairly prejudicial. *See, e.g., Helminski v. Ayerst Lab.*, 766 F2d 208, 213-18 (6th Cir), *cert den* 474 US 981 (1985) (discussed *infra*); *Morley v. Superior Court of Arizona, Etc.*, 131 Ariz 85, 638 P2d 1331, 1333-34 (1981) (discussed *infra*); *Gage v. Bozarth*, 505 NE2d 64, 67-69 (Ind App 1987) (exclusion of seven-year-old automobile accident victim from liability phase of bifurcated personal injury trial was not abuse of discretion where evidence supported findings that presence of plaintiff, who was quadriplegic and dependent on ventilator to breathe, was potentially prejudicial to jury, and that plaintiff was unable to comprehend proceedings or to assist his counsel); *In re Richardson-Merrell, Inc. Bendectin Products*, 624 F Supp 1212, 1224 (SD Ohio 1985) (exclusion of children with birth defects from courtroom was appropriate during causation phase of bifurcated trial of products liability action brought by those children against manufacturer of drug that allegedly caused birth defects, presence of

---

[11] At trial, counsel for Adam argued that Adam was entitled to be present during the trial of the liability issue by virtue of the provisions of Article I, section 10, or Article VII (Amended), section 3, or both, of the Oregon Constitution.

Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Article VII (Amended), section 3, provides in part:

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved, * * *."

On appeal, however, no assignment of error raises or relies on constitutional issues about a civil party's right to be present during a jury trial. We decline to address such issues in the absence of assigned error, and we express no opinion on whether the outcome of this case would be different if constitutional grounds had been assigned.

children would be inherently prejudicial, no testimony by children was contemplated, and children could not meaningfully consult with counsel in presentation of case); *Monteleone v. Gestetner Corp.*, 140 Misc 2d 841, 531 NYS 2d 857, 860-61 (NY Sup Ct 1988) (ten-year-old boy, born without arms and with functional but substantially shortened legs, could be excluded from liability portion of his trial against companies allegedly responsible for his defects, as his presence would prejudice jury, and his youth and naivete precluded his ability to comprehend proceedings and in any meaningful way to assist counsel on complex issues of chemistry and teratogeny involved in liability aspect of trial).

The *Helminski* and *Morley* opinions are most instructive. In *Helminski v. Ayerst Lab.*, *supra*, the Sixth Circuit Court of Appeals affirmed the trial court's bifurcation of liability and damages and its exclusion of the incompetent child in a suit by his guardian *ad litem* against an anesthetics manufacturer for developmental injuries allegedly suffered *in utero*. In so doing, the court noted that a hearing on potential jury prejudice prior to exclusion would be the best course, 766 F2d at 217, but concluded that the trial court's failure to hold such a hearing was not reversible error:

> "[W]here the Helminskis acted as [child's] next friends and legal representatives, where all parties agree that [child] was completely unable to comprehend the proceedings, and where [child,] because of his extremely low I.Q.[,] could not aid his attorney in any meaningful way, we conclude that [child's] exclusion does not constitute reversible error."

766 F2d at 218.

In *Morley v. Superior Court of Arizona, Etc.*, *supra*, 638 P2d at 1334, the Supreme Court of Arizona stated:

> "Having considered the various precedents, we believe the best rule is applied in *Dickson v. Bober.* '[A] plaintiff unable by reason of his injuries to contribute or understand the trial proceedings' may be excluded, in the court's discretion, from the trial of the *liability* issue if the plaintiff will be 'fully and adequately represented by counsel.' A plaintiff unable to at least communicate with counsel will have no right denied by exclusion from the courtroom during the liability phase of the trial. If in addition the plaintiff's

physical condition, allegedly caused by the defendant, is so pitiable that the trial court determines the plaintiff's mere presence would prejudice the jury, then failure to exclude the plaintiff during the liability phase would deny the defendant's right to an unbiased jury when the source of the bias is totally irrelevant to the liability issue." (Citations omitted.) (Emphasis in original.)

We adopt the standard that a plaintiff who is unable to comprehend, meaningfully participate in the proceedings, or assist his or her lawyer in the presentation of a case may be excluded from the liability portion of a bifurcated trial if the trial court, in the exercise of informed discretion, determines that the party's presence would be unfairly prejudicial. We conclude that the trial court's ruling that excluded Adam from the courtroom during the *liability* phase of trial was a proper exercise of informed discretion. We agree that the preferred method is for the trial court to hold a formal hearing and personally view the party before it makes a ruling on whether to exclude that party from the liability phase of trial.

In this case, although the trial court did not hold a formal hearing, it did have a significant amount of information on which to base an informed decision. The trial court's exclusion ruling was made during the sixth day of trial. By that time, the court had heard detailed testimony from numerous medical experts about perinatal asphyxia, hypoxia, neurological problems, and damage to Adam's brain. There was evidence that Adam suffers eight to twelve seizures per day. Plaintiffs' Fourth Amended Complaint for Damages, which formed the basis for Adam's case, claimed injuries, including "intellectual impairment, including mental retardation, seizures, the inability to control his limbs (spastic quadriplegia), and dysfunction of other bodily functions." There is no dispute that Adam could not comprehend or meaningfully participate in the proceedings or assist his lawyers. There is no suggestion that jurors' observations of Adam would have helped them to understand the evidence. There is nothing in the record about how Adam's personal presence in the courtroom could have aided the jury in determining whether defendants were negligent and, if so, whether that negligence caused Adam's extensive injuries.

Adam was represented and his interests were to be protected by his mother, guardian *ad litem*, and by his lawyers.[12]

We conclude that the trial court had an ample basis to believe that Adam's presence in the courtroom during the liability phase of the bifurcated trial may have caused the jury to decide the question of liability on an improper basis, *i.e.*, an emotional one. The trial court did not abuse its discretion and, therefore, did not err in excluding Adam from the liability phase of the trial.

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is affirmed.

---

[12] ORCP 27A and 27B provide that when a minor who is a party to an action does not have a guardian or conservator, the minor shall "appear by" a guardian *ad litem*.

ORS 20.150 provides for recovery of costs when "a party appears by * * * guardian *ad litem*" and refers to the party as the one "for whom appearance is made."

ORS 30.810 provides for inclusion of the parents' medical expenses as damages when "the guardian *ad litem* of a child maintains a cause of action for recovery of damages to the child."