Argued and submitted April 14, reversed and remanded July 16, 2003

In the Matter of Baby Boy Cooper,
aka Jahan Jamal Cooper,
aka Isaac Cooper, Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Meisha Diane COOPER,
*Appellant.*

9903-804672; A119563

72 P3d 674

Peter Miller argued the cause and filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kathryn Underhill argued the cause and filed the brief for the child.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Mother appeals from a judgment terminating her parental rights and ordering the permanent commitment of her child to the Department of Human Services (DHS) for adoption. ORS 419B.500. Mother argues that the trial court erred in entering the termination judgment on the basis of the presentation of a *prima facie* case because, although she failed to personally appear for the initial hearing on the termination petition, *see* ORS 419B.917, her guardian *ad litem* did appear and requested that the court set dates for trial. We conclude that the guardian *ad litem's* appearance and objection precluded the summary termination of mother's parental rights. Consequently, we reverse and remand.

Although we review the record *de novo*, ORS 419A.200(6)(b) and ORS 19.415(3), the material facts are uncontroverted. The child was born on October 19, 2001. On the same day, he was placed in protective custody due to concerns about mother's mental health and her ability to parent. On October 22, the state filed a petition alleging that, because "[t]he mother's mental health issues place the [child] at risk" and "[t]he whereabouts and legal status of the father are unknown," the child was properly within the jurisdiction of the juvenile court. Following a hearing on that same date, the court granted temporary custody of the child to DHS and ordered that the child be placed in shelter care. That determination was based on the court's findings that

> "mother has serious mental health issues [and w]as placed on psychiatric hold. Older child in relative care—mother unable to provide care. * * * Mother made threats to harm child, demonstrating symptoms of psychosis."

On December 31, 2001, the child's attorney moved for an order appointing a guardian *ad litem* for mother, asserting that, because of mother's mental disabilities, she could not "adequately give direction to [her] counsel." In particular, as described by the child's attorney in her supporting affidavit, mother's mental status had "deteriorated while in custody pending criminal charges" and mother's criminal defense attorney was seeking an aid-and-assist evaluation on her behalf. The affidavit further represented that

"[mother's attorney] did not arrange transport of [mother] to the status hearing because [mother] was too unstable to participate in the hearing. [Mother] is not currently taking medication, which she has taken previously. Dr. Robert Basham has previously diagnosed [mother] with Schizophrenia, Paranoid Type, Rule Out Intermittent Explosive Disorder, and Paranoid Personality Disorder."

On January 2, 2002, the state filed an amended petition, alleging that the child remained within juvenile court's jurisdiction because (1) "[t]he mother's mental health issues place the [child] at risk"; (2) "[t]he whereabouts and legal status of the father are unknown"; (3) "[t]he mother's chaotic lifestyle and residential instability place the child at threat of harm"; and (4) "[t]he mother has anger control problems with violent propensities that place her child in threat of harm."

On January 28, after the status hearing on the amended petition, the juvenile court appointed a guardian *ad litem* for mother and scheduled a hearing to adjudicate the jurisdictional petition. Mother did not attend that hearing on April 2, because she was still in custody, but her attorney and guardian *ad litem* did appear and participate in the hearing. On April 12, the trial court entered a judgment establishing dependency jurisdiction over the child.

On April 17, 2002, the child's attorney filed a petition to terminate mother's parental rights. In an affidavit submitted in support of the termination petition, the child's attorney represented that,

"[a]t the time of the child's birth, a psychiatric hold was placed on the mother. The mother is diagnosed as schizophrenic, paranoid type. The mother is currently incarcerated awaiting an aid and assist evaluation at the Oregon State Hospital. The mother has another child not in her custody, to whom she relinquished her parental rights on February 23, 2000, due to her inability to provide that child with minimally adequate care. The conditions that led to mother's inability to care for that older sibling have not been ameliorated. In addition to chronic mental illness, mother suffers from an anger control problem, which places this child at risk of harm."

The initial hearing on the termination petition was scheduled for May 1. In April, the child's attorney sought a continuance because, due to jail overcrowding, mother had been released from custody before her transfer for the aid-and-assist evaluation and her location was unknown. The court granted that continuance. On August 16, 2002, because mother's whereabouts were still unknown, the court granted the child's attorney's motion for an order directing service of summons on mother by publication and posting. As determined by the court's order to show cause, the summons required that mother appear on October 2, 2002, for the initial hearing on the termination petition.

Although mother was served by publication and posting, she did not appear for the October 2 hearing. Mother's guardian *ad litem* and the guardian *ad litem's* attorney were also summoned and did appear. Because of mother's absence, the child's attorney moved to proceed with the presentation of a *prima facie* case on the allegations of the termination petition. The guardian *ad litem* objected to the court going forward at that time with the adjudication of the petition, and the following colloquy ensued:

"[Guardian *ad litem*:] Well, I think, Your Honor, as her guardian *ad litem*, having been appointed in that capacity and the reason I was appointed was because at the time she was in custody pending an aid and assist evaluation that was ordered by the downtown department, it presumes, of course, she is not competent. So as her guardian *ad litem*, I am standing here in her shoes and having not had a chance to speak with her in the recent past I am requesting trial dates be set because I think appointing a guardian *ad litem*, the fact there was an aid and assist pending a criminal matter again presumes incompetence. * * * I as her guardian *ad litem* am here for the purposes of litigation, stand in her shoes. I am present and request trial dates be set.

"* * * * *

"[The court:] [W]hen is the last time you had contact with this mother?

"[Guardian *ad litem*:] Your Honor, the agency has not had any contact since her release from jail which was March of '02."

The guardian *ad litem* made no representations as to the nature of any evidence or defense to the petition that she believed could be advanced on mother's behalf at trial.

After that exchange, the court concluded that mother "was served and that the moving party has fulfilled their obligations, statutory obligations in this proceeding" and directed the child's attorney to "proceed on the petition today." Thus, notwithstanding the guardian *ad litem's* request that the court schedule dates for a full adversarial trial of the petition to terminate parental rights, the juvenile court directed the child's attorney to proceed with the *prima facie* presentation. The court continued the appointments of the guardian *ad litem* and the guardian *ad litem's* attorney for 31 days and then excused both for the remainder of the proceeding.

The child's attorney then presented the testimony of a DHS caseworker substantiating the allegations of the termination petition and asked the court to take judicial notice of the legal file. Based on that *prima facie* showing, the trial court determined that sufficient allegations of the petition had been proved by clear and convincing evidence and terminated mother's parental rights.[1]

---

[1] The court based its decision to terminate mother's parental rights on its conclusion that the *prima facie* presentation by the child's attorney established the great majority of the allegations in the termination petition by clear and convincing evidence. Among those allegations were (1) "mother suffers from chronic mental illness, emotional illness, and mental deficiency which are of such a nature and duration as to render her incapable of providing proper care to the child for extended periods of time"; (2) mother's parenting ability is impaired by her long history of criminal activity, including periods of incarceration; (3) mother has another child who has been removed from her custody "due to her inability to provide that child with minimally adequate care"; (4) "mother has residential, employment and relationship instability which seriously impairs her ability to care for the child"; and (5) "mother has an anger management problem and engages in assaultive behaviors which place the child at risk of emotional and physical harm." The juvenile court dismissed the allegation that "there has been a lack of effort or an inability on the part of the mother to adjust her circumstances, conduct and conditions to make it possible for the child to safely return home within a reasonable time," because of mother's "severe and significant mental illness and the inability to [gauge] her capacity because of that mental illness." Lastly, the court held that as "[t]here is no legal father for this minor child[,]" and as "[i]t is in the best interest of this child to have the parental rights of [mother] terminated[,] * * * the parental rights of [mother] * * * are herewith terminated * * *."

■■ On appeal, mother does not challenge the adequacy of the summons requiring her appearance at the October 2, 2002, hearing or the sufficiency of the evidence to support termination of her parental rights. Instead, mother contends that the court erred in denying the guardian *ad litem's* request to schedule trial dates and by allowing the child's attorney to proceed with the *prima facie* hearing.[2] According to mother, although ORS 419B.917 allows the court to proceed in a parent's absence if the parent has been properly summoned, "the parent was present in this case through her [guardian *ad litem*]. Therefore, the court was not authorized to proceed over the [guardian *ad litem's*] request for contested trial dates." Mother further asserts that, because "[t]he purpose in appointing a [guardian *ad litem*] is to protect the due process rights of a parent who, due to mental illness, is incapable of appearing or comprehending court proceedings[,]" the court's decision to proceed on the basis of the presentation of a *prima facie* case, notwithstanding the guardian *ad litem's* request to set dates for trial, denied mother "her fundamental liberty interest in her child and consequent due process right to a fair hearing in the termination proceeding."

The state[3] responds that ORS 419B.917 requires personal appearance by a parent when properly summoned in a termination matter and authorizes the court, upon sufficient proof, to summarily adjudicate the merits of the termination petition as to the rights of any nonappearing parent. The state further asserts that a guardian *ad litem*

---

[2] The Supplementary Local Rules for Multnomah County do not describe the procedures that apply in the presentation of a *prima facie* case. In response to questions at oral argument on appeal, mother's attorney stated that the procedures governing *prima facie* presentations were a matter of practice and that the typical *prima facie* case consists of petitioner's offering of the legal file and the unchallenged testimony of the DHS caseworker. In response to similar questions, counsel for the state represented that, in cases in which the court has ruled that it will proceed on the basis of a *prima facie* presentation, the parent's attorney typically withdraws before the state presents its case. According to the state, there is no requirement that the attorney withdraw but that it is a matter of practice because of "an ethical responsibility on the part of the attorney who has had no contact with the parent and therefore cannot in good faith assert a position one way or another in response to the proceeding."

[3] The child also submitted a brief challenging mother's appeal of the termination judgment, and the state incorporated and adopted the child's arguments by reference in its brief. For purposes of simplicity, we ascribe respondents' joint arguments generically to "the state."

represents the parent but does not "become the parent" for purposes of determining whether that parent has "appeared" for purposes of ORS 419B.917(1)—and, consequently, the court did not err in proceeding with the adjudication of the termination petition on the basis of a *prima facie* presentation in mother's absence.

Thus, the parties' dispute reduces to a single question: Does ORS 419B.917 authorize the juvenile court to summarily adjudicate the merits of a termination petition based on a *prima facie* presentation where (a) a parent who has been properly summoned, does not personally appear at a pretrial hearing, but (b) that parent's duly appointed guardian *ad litem* does appear at the hearing and, on the parent's behalf, objects and asserts an entitlement to a full adversarial trial on the merits of the petition?

The answer lies in the interplay of ORS 419B.917 and ORS 419B.875(2), pertaining to the appointment and rights of guardians *ad litem* in dependency proceedings. For the reasons that follow, we conclude that, under those statutes, a juvenile court cannot summarily adjudicate a termination petition over the guardian *ad litem's* objections.

■    ORS 419B.917 provides:

"(1)   If a child is before the court and *a person who is required to be summoned has been summoned and has failed to appear for any dates*, including but not limited to trial dates for which the person has been summoned, and the petitioner is ready to proceed, *the court may proceed with the case in the person's absence.* If the summoned party seeks a change of the date for which the party is summoned, the party must appear at the time the request to change the date is made to receive service of summons for a new date or must authorize the party's attorney to accept service of summons for the new date.

"(2)   Except by express permission of the court, for a jurisdictional or termination of parental rights trial or related mandatory court appearances, summoned parties may not waive appearance or appear through counsel."[4]

(Emphasis added.) Neither our court nor the Supreme Court has addressed that statute's application to circumstances in

---

[4] ORS 419B.917 was enacted in 2001 as part of House Bill 2611, which created a single set of procedural rules for use in juvenile dependency cases and in

which a guardian *ad litem* has been appointed for a "nonappearing" and incapacitated parent. We proceed, then, to employ the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), looking first to the text of the statute, read in context, as the best indicator of the legislature's intent. *Id.* at 610-11.

ORS 419B.917(1) provides, in part, that, if a "person *who is required to be summoned* has been summoned and has failed to appear for any dates, * * * the court may proceed with the case in the person's absence." (Emphasis added.) ORS 419B.839, in turn, provides that summons "must be issued to be served" on (1) the legal parents of the child; (2) the legal guardian of the child; (3) the person with physical custody of the child; (4) under certain circumstances, the putative father of the child; and (5) if the child is 12 years of age or older, the child himself or herself.

Thus, mother, as a "legal parent of the child," was a person "required to be summoned" within the meaning of ORS 419B.917(1). Given the statutory text, there is no question that—but for the appointment of the guardian *ad litem*—the juvenile court could have "proceeded with the case" in mother's absence, including, as appropriate, summarily terminating mother's parental rights upon a sufficient *prima facie* showing.[5] But what effect does the appointment of a guardian *ad litem* and the guardian's appearance

termination of parental rights proceedings. Or Laws 2001, ch 622, § 31. Before ORS 419B.917 was enacted, the authority of a trial court to terminate parental rights by default resided in *former* ORS 419B.515, *repealed by* Or Laws 2001, ch 622, § 57, which provided, in part, that service of summons on a parent

> "shall contain a statement to the effect that the rights of the parent or parents are proposed to be terminated in the proceeding and that if the parent or parents fail to appear at the time and place specified in the summons, the court may terminate parental rights and take any other action that is authorized by law."

*See State ex rel Juv. Dept. v. Mertes*, 162 Or App 530, 532-33, 986 P2d 682 (1999) (noting that "ORS 419B.515 * * * is the source of the juvenile court's authority to terminate parental rights following a parent's default").

The amendments to ORS 419B.875, pertaining to the appointment and rights of guardians *ad litem* in dependency proceedings, were enacted concurrently under a separate section of HB 2611. Or Laws 2001, ch 622, §§ 39, 39a.

[5] Here, as noted, mother does not argue that there was any deficiency in the method of service of summons or the content of summons. *Cf. State ex rel Juv. Dept. v. Kopp*, 180 Or App 566, 579-85, 43 P3d 1197 (2002) (reversing trial court's denial of motion to set aside default termination judgment based on insufficiency of summons).

and objections at a pretrial hearing have on the application of ORS 419B.917(1)?

ORS 419B.875(2), which was enacted concurrently with ORS 419B.917, *see* 188 Or App at 595-96 n 4, provides:

"When a court determines that a parent or guardian, due to mental or physical disability, cannot adequately act in the parent's or guardian's interests or give direction to the parent's or guardian's counsel on decisions the parent or guardian must make, the court shall appoint some suitable person to act as guardian *ad litem* for the parent or guardian."

Neither 419B.875 nor any other provision of the Juvenile Code—nor, remarkably, apparently any other Oregon statute—defines the term "guardian *ad litem*."[6]

Nevertheless, as a legal term of art, the meaning of "guardian *ad litem*" is well settled. *Black's Law Dictionary* 713 (7th ed 1999), gives the following definition:

"A guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party."

Similarly, *Webster's Third New Int'l Dictionary* 1007 (unabridged ed 1993), defines "guardian *ad litem*" as "a guardian appointed by a court to represent in a particular lawsuit the interests of a party who is a minor or an incompetent person." Both of those definitions comport with the only definition of guardian *ad litem* that we have been able to find in an Oregon appellate decision:

"A guardian *ad litem* is a special guardian appointed by the court to prosecute or defend in behalf of an infant a suit to which such infant is a party. His office is to represent the interests of the infant in the litigation. Although an infant is capable of suing or being sued, his incapacity requires

---

[6] Several statutes and rules do, of course, refer to the appointment of guardians *ad litem*. For example, Rule 27 of the Oregon Rules of Civil Procedure provides that, if a minor or incapacitated person does not have a guardian, or there is no conservator for such a person's estate, the person "shall appear by a guardian *ad litem* appointed by the court." ORCP 27 A, B; *see also* ORCP 7 D(3)(a)(iii) (providing that, in certain circumstances, service upon an incapacitated person is to be affected upon that person as well as "upon a guardian *ad litem* appointed pursuant to Rule 27 B(2)"); *cf.* ORS 20.150 (providing for recovery of costs when a party "appears by * * * a guardian *ad litem*"). Under ORS 419B.800(1), the provisions of the Oregon Rules of Civil Procedure do not apply in juvenile court dependency proceedings.

that he be protected and to that end the statute requires that the infant litigant should be properly represented by some one who may adequately enforce or protect his rights."

*Benson v. Birch,* 139 Or 459, 461, 10 P2d 1050 (1932).

■ Thus, it is the function and responsibility of a guardian *ad litem* to appear on behalf of, and represent the interests of, the incapacitated person.[7] That does not mean, of course, that the guardian *ad litem* "steps into the shoes" of the represented person *for all purposes. See, e.g., Christman v. Scott,* 183 Or 113, 117-18, 191 P2d 89 (1948) ("The action was properly prosecuted in the name of the deranged person. The cause of action was his; and he was not divested of it when he became incompetent. The cause did not belong to the guardian *ad litem.*"). But, at least generally in the civil context, it does mean that an appearance by a duly appointed guardian *ad litem* constitutes an appearance by the represented person. Consequently—and most obviously—such an appearance would preclude the entry of a default on the grounds that the represented person had failed to appear.[8]

---

[7] *See generally* 57 CJS 173-74, *Mental Health,* § 271 (1992):

"[T]he guardian *ad litem* * * * has the duty to determine the best interest of the ward, and he fully represents the rights and interests of his ward in the particular case, and his rights and powers generally extend to all matters in the particular litigation affecting the interest of his ward, in every stage of the action."

(Footnotes omitted.) In *People in Interest of M.M.,* 726 P2d 1108, 1120 (Colo 1986), which also involved the appointment of a guardian *ad litem* for a mentally incapacitated parent in a termination proceeding, the court cogently explained the difference between the obligations of counsel and of the guardian *ad litem* in this context:

"While it is the lawyer's duty to provide the parent with legal advice on such decisions as whether to contest the termination motion and whether to present particular defenses to the motion, it is the role and responsibility of the parent to make those decisions. If the parent is mentally impaired so as to be incapable of understanding the nature and significance of the proceeding or incapable of making those critical decisions that are the parent's right to make, then·a court would clearly abuse its discretion in not appointing a guardian *ad litem* to act for and in the interest of the parent."

[8] *Cf. Bremner v. Charles,* 312 Or 274, 280-85, 821 P2d 1080 (1991), *adh'd to on recons,* 313 Or 339, 832 P2d 454, 506 US 975, 113 S Ct 467, 121 L Ed 2d 374 (1992) (where guardian *ad litem* had been appointed to appear on behalf of brain-damaged young child, it was not an abuse of discretion for trial court, notwithstanding the child's status as a party, to exclude the child from courtroom during liability phase of medical malpractice trial).

Any other result would frustrate and contravene the purpose of appointing the guardian *ad litem*.

If those general principles are imported into the dependency context by virtue of ORS 419B.875(2), then mother did not "fail to appear" for purposes of ORS 419B.917. That is, the guardian *ad litem's* appearance and assertion of rights on mother's behalf would constitute an appearance by mother.

We discern nothing in the context of the dependency statutes, particularly including ORS 419B.917 and ORS 419B.875(2), that demonstrates that the purpose and effect of appointing a guardian *ad litem* for an incapacitated parent in a dependency proceeding is any different than in other contexts. We are cognizant that ORS 419B.875(1), in identifying the "parties" to the "proceedings in the juvenile court," lists "[t]he legal parents" and "[a] guardian *ad litem* appointed under subsection (2) of this section" separately. ORS 419B.875(1)(b), (i). However, "parties" as used in that connection refers generically to persons having an entitlement to participate in the proceedings and not, particularly, to persons against whom judgment may be rendered.[9] Thus, nothing in the statutes, and particularly ORS 419B.875(1), contradicts the general principle that the function of the guardian *ad litem* is to appear on behalf of, and represent the interests of, the incapacitated parent.

■ We note, finally, that our understanding of the proper interaction between ORS 419B.917 and ORS 419B.875(2) comports with constitutional considerations. "The Due Process Clause of the Fourteenth Amendment

---

[9] For example, ORS 419B.875(1) also identifies as a potential "party" a "court appointed special advocate, if appointed." ORS 419B.875(1)(f). By direct analogy to a guardian *ad litem*, a court appointed special advocate has no personal substantive interest in the controversy. *See* ORS 419A.004(8); ORS 419A.170. Instead, as with a guardian *ad litem*, a court appointed special advocate's "party" status is limited to acting on behalf of the represented person. *See* ORS 419A.170(2).

Any other construction of "parties" within the meaning of ORS 419B.875(1) could yield not only incongruous, but contradictory, results. For example, in the circumstances presented here, a parent could be subject to a default judgment pursuant to ORS 419B.917(1), but his or her guardian *ad litem* would be entitled, independently, to proceed to litigate the merits of the termination proceeding.

requires that parents be provided with notice and an opportunity to be heard before being deprived of parental rights." *State ex rel Juv. Dept. v. Bryant*, 84 Or App 571, 574, 735 P2d 5 (1987) (citing *Armstrong v. Manzo*, 380 US 545, 85 S Ct 1187, 14 L Ed 2d 62 (1965)). The termination proceeding must be "fundamentally fair"; that is, it must afford the parents an "opportunity to be heard at a meaningful time and in a meaningful manner." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990) (citing *Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976)).

*State ex rel Juv. Dept. v. Evjen*, 107 Or App 659, 661, 813 P2d 1092, *rev den*, 312 Or 526 (1991), is directly analogous to this case. There, the mother's severe mental illness had resulted in her commitment to Dammasch State Hospital two weeks before the termination hearing. By the time of the hearing, the mother was in restraints and was too unstable to be transported. *Id.* at 662. The trial court denied the mother's counsel's request for a continuance and, ultimately, terminated the mother's parental rights. *Id.* On appeal, we held that the termination proceeding was not fundamentally fair because the mother's mental illness prevented her from attending the hearing and she had no guardian *ad litem* to appear on her behalf:

> "It is elementary that mother has a fundamental liberty interest in her parental rights. Therefore, she must be given a meaningful opportunity to be heard before she is permanently deprived of her status as the mother of child. As [*State ex rel Juv. Dept. v.*] *Stevens*[, 100 Or App 481, 786 P2d 1296, *rev den*, 310 Or 71 (1990), *cert den*, 498 US 1119, 111 S Ct 1071, 112 L Ed 2d 1177 (1991),] and [*State v.*] *Blum*[, 1 Or App 409, 463 P2d 367 (1970),] suggest, the opportunity to be heard does not translate into an absolute right to be *physically* present at a parental rights termination hearing. However, it does mean that a parent must be allowed to participate in the hearing in *some* form. Here, mother was not capable of appearing in person and did not participate through a guardian *ad litem*. We hold that, under those circumstances, the termination proceeding was not fundamentally fair."

*Id.* at 663-64 (emphasis in original; footnote omitted).

Here, a guardian *ad litem* was appointed for mother to address precisely the sort of due process concerns that underlay *Evjen*. Nevertheless, and notwithstanding the guardian *ad litem's* appearance and objections on mother's behalf, the court proceeded to summarily adjudicate the petition. By so proceeding, the court effectively nullified the procedural protections afforded by the appointment of the guardian *ad litem*. The court denied mother her statutory and constitutional entitlement to participate meaningfully in the termination proceedings. *See* ORS 419B.875; *Evjen*. That was reversible error.

■     We reiterate: Where a guardian *ad litem* has been appointed for a parent pursuant to ORS 419B.875(2), and the guardian *ad litem* appears on the parent's behalf and objects to summary adjudication of a termination petition pursuant to ORS 419B.917(1), the juvenile court cannot summarily adjudicate the petition based on a *prima facie* presentation. Rather, the court must proceed to a full adversarial trial, ORS 419B.521, with the guardian *ad litem* appearing on behalf of, and representing the interests of, the incapacitated person. *See, e.g., Evjen; Blum.*

Reversed and remanded.