Argued and submitted September 15, 2015, affirmed February 10, petition for review allowed May 5, 2016 (359 Or 525)

**KIPLAND PHILIP KINKEL,**
*Petitioner-Appellant,*

*v.*

**Rob PERSSON,**
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
13C13698; A155449

367 P3d 956

Andy Simrin argued the cause for appellant. With him on the brief was Andy Simrin PC.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. On the brief were Frederick M. Boss,

Deputy Attorney General, Anna M. Joyce, Solicitor General, and James M. Aaron, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

SERCOMBE, P. J.

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## SERCOMBE, P. J.

When he was 15 years old, petitioner shot and killed both of his parents. The next day, petitioner went to school and shot more than two dozen students, killing two and injuring the others. Once in custody, using a knife, petitioner attacked a police officer. Ultimately, petitioner pleaded guilty to four counts of murder and 25 counts of attempted murder; he pleaded no contest to an additional count of attempted murder based on his attack on the police officer. Following a lengthy sentencing hearing, the trial court sentenced petitioner to four concurrent 25-year prison terms on the murder convictions. On each of the attempted murder convictions, the court sentenced petitioner to a 90-month prison term, with 40 months of each sentence to run consecutively to all other counts. Thus, in the aggregate, petitioner was sentenced to 1,340 months (approximately 112 years) in prison. We affirmed those sentences on direct appeal, and the Supreme Court denied review. *See State v. Kinkel*, 184 Or App 277, 56 P3d 463, *rev den*, 335 Or 142 (2002) (*Kinkel I*).

In 2003, petitioner sought post-conviction relief, requesting that the judgment of conviction be set aside and the sentences be vacated. The post-conviction court denied relief and, on appeal from the post-conviction judgment, we affirmed and the Supreme Court, again, denied review. *See Kinkel v. Lawhead*, 240 Or App 403, 246 P3d 746, *rev den*, 350 Or 408 (2011) (*Kinkel II*).

In 2013, petitioner filed a successive petition for post-conviction relief, asserting that the nearly 112-year sentence imposed by the trial court violates the Eighth Amendment's proscription against cruel and unusual punishments, as explained by *Graham v. Florida*, 560 US 48, 13 S Ct 2011, 176 L Ed 2d 825 (2010), and *Miller v. Alabama*, 567 US ___, 132 S Ct 2455, 183 L Ed 2d 407 (2012). Petitioner and defendant (the superintendent) filed cross-motions for summary judgment and, ultimately, the post-conviction court granted the superintendent's motion and entered a judgment dismissing the petition with prejudice. Petitioner appeals the post-conviction court's judgment. As explained below, we conclude that the state statutory rule against successive

petitions bars the grounds for relief that petitioner raised in this case and, therefore, we affirm.

The relevant facts are not in dispute. As noted, petitioner's convictions arise from the murders of his parents and his "subsequent shooting rampage at Thurston High School in Springfield in May 1998, when petitioner was 15 years old." *Kinkel II*, 240 Or App at 405. Petitioner entered into a plea agreement under which he pleaded guilty to four counts of murder and 25 counts of attempted murder and pleaded no contest to one count of attempted murder. In exchange, the state agreed to seek concurrent 25-year sentences for the four murder charges. Petitioner acknowledged that, for each count of attempted murder, he would "receive a sentence of 90 months" and that sentencing on those counts would be "open."

At the sentencing hearing, which lasted six days, the court heard evidence regarding petitioner's history and mental illness.[1] We described the evidence from the sentencing hearing in *Kinkel I*:

> "Evidence presented at sentencing demonstrated that defendant had been fascinated by weapons and explosives for many years. He had made comments to other students about his ability to build bombs and his desire to shoot people and had expressed admiration for the Unabomber and for a school shooting in Jonesboro, Arkansas. He had suggested to classmates that he might bring a gun to school and start shooting people and that he might bomb the school during a pep rally. Handwritten notations by defendant confirmed his interest in weapons and explosives and also revealed defendant's fantasies of killing people. Those fantasies did not simply focus on individuals, but on killing large numbers of people indiscriminately. Defendant had been disciplined for numerous instances of acting out at school over the course of several years, including various acts of aggression against other students. He had also been disciplined for throwing rocks off a highway overpass onto cars and for shoplifting. He had received a limited amount of mental health treatment for depression in 1997, but that treatment had been discontinued before the 1997-98 school year.

---

[1] The transcripts from the sentencing hearing were submitted as exhibits in this case.

"After the crimes, defendant was evaluated by numerous medical experts. He reported that he had been hearing voices since he was 12 years old, including a voice that generally advocated violence against others, a second voice that criticized defendant and sometimes advised him to commit suicide, and a third that echoed the words of the other two. Defendant stated that the voice that advocated violence against others, instructed him to commit the murders and attempted murders on May 20 and 21, and he felt he had no choice but to obey the voice. He thought that the voices might have come from a chip that the government had implanted into his head. He also expressed concern that the Walt Disney Company was taking over the country and felt that he needed to be prepared for an invasion by the Chinese. He expressed fears that he was being spied on and concerns that his medications were poisoned. He tried on several occasions, secretively, to avoid taking his medications. The medical experts, for the most part, concluded that defendant suffers from paranoid schizophrenia or, possibly, a schizoaffective disorder that combines some of the essential features of schizophrenia and depression.

"Evidence was adduced at sentencing that a significant number of defendant's blood relatives have suffered from a variety of mental illnesses, including mood disorders, schizoaffective disorders, and schizophrenia. Several had been institutionalized. Expert testimony indicated that the presence of mental illness in defendant's family could have been a contributing factor to his own mental illness.

"The experts who evaluated defendant agreed that he exhibited psychotic symptoms that correlated with the features of paranoid schizophrenia. People who suffer from paranoid schizophrenia often maintain well in school, work, or social situations until delusions, often persecutory in nature, cause them to act out in violent ways. The experts also agreed that there is no cure for paranoid schizophrenia. There are medications, however, that can control symptoms such as hallucinations and delusions, at least to some degree. One psychologist, Dr. Orin Bolstad, who conducted extensive testing of defendant, opined that some of defendant's symptoms, including hearing voices, had diminished when defendant was given such medication. When asked about defendant's future dangerousness, Bolstad was unable to make a prediction. He did observe,

however, that defendant's initial response to antipsychotic medication was positive, that defendant was intellectually capable, and that defendant had not presented a management problem while incarcerated, all of which he thought were good prognostic indicators.

"When asked to comment on potential public safety issues if defendant were to be released from prison, Bolstad suggested that defendant might someday be able to be released into the community with safeguards, including requirements that he see a psychiatrist regularly, be tracked by use of a monitoring bracelet, attend support groups, and have his blood and urine monitored to determine whether he was receiving the appropriate amounts of medication. He also suggested that, were defendant to be released from prison after serving 25 years, there might be advances in antipsychotic medications by that time.

"Dr. William Sack, a psychiatrist who examined defendant, concurred that defendant's crimes were the product of a psychotic process that had been building over a long period of time. He believed that defendant's mental illness was treatable, although not curable. Sack rendered an opinion that, if defendant were to receive 25 or 30 years of treatment from a psychiatrist with whom he built a trust relationship, and if defendant were to take medications that obliterated his symptoms, he would not be a danger to society as long as he was carefully monitored. He also felt that, over the next 25 years, medications for, as well as knowledge about, schizophrenia were likely to improve. Sack acknowledged that, if defendant's mental illness went untreated, defendant would remain a dangerous person."

184 Or App at 280-82. A large number of petitioner's victims, along with his victims' parents, also spoke at the sentencing hearing regarding the effects of his crimes. "They almost uniformly expressed intense fears of [petitioner] being returned to society and urged that [he] be incarcerated for the remainder of his life for his crimes." *Id.* at 282-83.

Petitioner's counsel argued that, in sentencing petitioner, the court had to consider both his mental illness and his youthfulness. With respect to petitioner's age at the time of the crimes, among other things, counsel asserted that imposition of a sentence that would result in petitioner being imprisoned for the rest of his life would constitute cruel and

unusual punishment and would, therefore, violate both the United States and Oregon constitutions:

"[T]he court must consider the defendant's age at the time of the offenses. And I'm going to continually refer to him as a fifteen-year-old offender, because the cases look at the time of the offense and his age at the time of the offense as the operative criteria considering age. So he is seventeen now; clearly he was fifteen at the time of the offenses.

"We're committed—and although the law requires that he be held accountable for his criminal conduct, the court cannot discount his youth in measuring its decision on sentencing. There are many reasons why the consequences for a fifteen-year-old should not be the same as an adult who committed several criminal acts.

"Many months ago we had a hearing to argue pretrial issues in this court. At that time the court took a number of issues under advisement, including my argument about the constitutionality of a life sentence for a fifteen-year-old offender. I would renew that argument here.

"* * * * *

"Under federal law, the Eighth Amendment standard for cruel and unusual punishment looks to evolving standards of human decency that mark the process of a maturing society. The Oregon corollary looks to whether the statute shocks the conscience of fair-minded people as applied.

"I would submit to you, Judge, if you do what the state advocated in this case, it violates both provisions. In this case, hope for this offender equates to hope for this community, thus explaining and overcoming what caused his conduct. I would submit to you that in a civilized society, we don't lock away our fifteen-year-old offenders without hope.

"* * * * *

"We must judge the constitutionality of the sentence by looking at the age of the offender and his mental status at the time of the offense. The law presumes a fifteen-year-old to be of insufficient judgment as a matter of law to engage in virtually all of the conduct to which we attach adult standards. He's not mature enough to vote. He's not mature enough to serve on juries. He's not mature enough to drive a car. He's not mature enough to drink or gamble, to get married, to enter into contracts, to engage in military service.

"Presumably, the rationale the law applies here is his judgment has not sufficiently matured to engage in these activities; nonetheless, we purport to hold him responsible for adult consequences for his judgment in his criminal conduct.

"The court [m]ust consider [petitioner's] lack of judgment due to his youthfulness in measuring its discretion in sentencing in this case, and I would read you a short quote from the U.S. Supreme Court * * * where Justice Powell wrote:

"'Adolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults.

"'Moreover, youth crime, as such, is not exclusively the offender's fault. Offenses by the young also represent a failure of the family, school, and the social system, which share responsibility for the development of American youth.'"

Ultimately, as noted, the court sentenced petitioner to the agreed-upon concurrent 25-year prison terms for the four murders and, for the attempted murders, imposed 90-month prison sentences, with 40 months of each to run consecutively to all other counts, for a total of 1,340 months. After the court imposed that sentence, defense counsel again objected that "the sentence is cruel and unusual as applied." Petitioner appealed the trial court's judgment, asserting that the sentence, which he characterized as a "true-life sentence," violated the proscriptions against cruel and unusual punishments in Article I, section 16, of the Oregon Constitution, and the Eighth Amendment to the United States Constitution.[2] He contended, among other things, that the sentence was vindictive and failed to account for the possibility that he would be reformed, and that the crimes arose from his mental illness which, in turn, "stemmed from his genetic makeup and from inadequate medical care over which he,

---

[2] In his third assignment of error on direct appeal, petitioner asserted that the trial court erred in "ruling that the state and federal constitutional bans on cruel and unusual punishment did not preclude imposing a true-life sentence."

as a 15-year-old juvenile, had no control." He also asserted that the sentence violated "Article I, section 15's 'reformation' principle."[3] As noted, we affirmed the trial court's judgment on direct appeal. *See Kinkel I*, 184 Or App 277.

Thereafter, petitioner filed a timely petition for post-conviction relief. *See* ORS 138.510(3) (a petition for post-conviction relief must be filed within two years after the criminal judgment becomes final). In that post-conviction relief case, petitioner asserted that he had received constitutionally inadequate assistance of counsel in the underlying criminal case. He asserted that counsel had been inadequate "during the plea negotiations, that his acceptance of the plea agreement was not knowing and voluntary, and that the plea agreement should not have been accepted without the consent of his guardian *ad litem.*" *Kinkel II*, 240 Or App at 405. The post-conviction court denied relief and, as noted, we affirmed. *Id.*

In 2012, the United States Supreme Court decided *Miller*, in which it held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 US at ___, 132 S Ct at 2469. According to the Court,

"[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or

---

[3] As part of that contention, petitioner pointed out that he "was 15 when he committed his crimes" and that he had "no chance to learn from the consequences of his criminal conduct before committing further conduct." Under the circumstances, he asserted that he "must be deemed capable of rehabilitation and eligible for release."

his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it."

*Id.* at ___, 132 S Ct at 2468 (citations omitted).

In light of *Miller*, in 2013, petitioner filed a second petition for post-conviction relief. As noted, he asserted that his sentence was unlawful because the cumulative sentence constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. The parties filed opposing motions for summary judgment. The superintendent asserted that summary judgment in his favor was appropriate pursuant to ORS 138.550 because "petitioner has previously sought post-conviction relief, and the issue he now attempts to raise *** could 'reasonably have been raised' in the previous post-conviction action; indeed, *** the very same issue <u>was</u> previously raised by petitioner on [direct] appeal."[4] (Underscoring in original.) According to the superintendent, petitioner's trial attorneys argued that a true life sentence "for a juvenile violates both the Eighth Amendment *** and Article I, section 16." Furthermore, the superintendent asserted that the

"claim petitioner now raises is virtually no different than the assignment of error he put before the Oregon Court

---

[4] Under ORS 138.550(2),

"[w]hen the petitioner sought and obtained direct appellate review of the conviction and sentence of the petitioner, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If the petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section."

Similarly, ORS 138.550(3) provides:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of course, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

of Appeals on direct appeal. As petitioner points out in his Reply to Defendant's Answer to Petition for Post-Conviction Relief, petitioner appealed his conviction and asserted that his sentence amounted to a true life sentence and that 'the true life sentence for a juvenile violated the proscription contained in the Eight[h] Amendment to the United States Constitution against the infliction of cruel and unusual punishment.' Following the Court of Appeals' affirmance of petitioner's convictions, petitioner filed in the Oregon Supreme Court a petition for review and again asserted that the sentence violated the Eighth Amendment. A claim that has been raised on direct appeal cannot be raised in a post-conviction proceeding unless a new constitutional principle is articulated after the direct appeal is concluded."

(Footnotes omitted.) Relying on ORS 138.550(3), the superintendent asserted that the claim petitioner sought to raise in his successive post-conviction petition is one that he reasonably could have asserted in the original post-conviction petition: "The question is not whether that issue already had been *decided* in his favor or even whether he likely would have *prevailed* on the claim at that time—the only question is whether the claim was one that, under the then-current case law, he reasonably *could* have asserted." (Emphases in original.) In the superintendent's view, petitioner's claim did not fall within the escape clause provision of ORS 138.550. The superintendent also asserted that the petition was time barred, did not fall within the escape clause provision of ORS 138.510,[5]

---

[5] ORS 138.510(3) provides:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts.

"(c) If a petition for certiorari to the United States Supreme Court is filed, the later of:

"(A) The date of denial of certiorari, if the petition is denied; or

"(B) The date of entry of a final state court judgment following remand from the United States Supreme Court."

and that *Miller* did not apply retroactively.[6] The superintendent also noted that *Miller* held that mandatory sentences of life without parole for juvenile offenders are unconstitutional. However, the superintendent pointed out, in petitioner's case, "no state statute *mandated* that petitioner receive life imprisonment without the possibility of parole, and petitioner *did not receive such a sentence.*" (Emphases in original.)

In his motion, petitioner noted that, although postconviction "is generally the forum for raising claims of inadequate and ineffective assistance of counsel," this case "presents the polar opposite." That is, "[c]ounsel for Petitioner in his underlying criminal case were prescient, but unable to persuade the trial court, Court of Appeals and Supreme Court of Oregon. The United States Supreme Court later bore them out." Petitioner pointed out that ORS 138.550(2) prevented him from raising "his Eighth Amendment claim in his first post-conviction case, because he raised the issue in his direct appeal." (Underscoring in original.) For that reason, he asserted that the "waiver provision in ORS 138.550(3) has no application here. Petitioner does allege 'grounds for relief [that] could not reasonably have been raised in the original or amended petition.'" (Quoting ORS 138.550(3) (underscoring and brackets in original).) In other words, petitioner asserted that the procedural bar contained in ORS 138.550 did not apply to his claim because, having raised the issue on direct appeal, he could not have raised it in his first petition for post-conviction relief and, therefore, he could raise it in his successive petition. He also asserted that *Miller* announced a new rule of constitutional law that applied retroactively.

At the hearing on the motions, the court stated that the superintendent's motion and memorandum were

---

[6] The United States Supreme Court resolved that issue in *Montgomery v. Louisiana*, ___ US ___, ___ S Ct ___, ___ L Ed 2d ___, 2016 WL 280758 (Jan 25, 2016), holding that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." ___ US at ___, 2016 WL 280758 at *11 (slip op at 14). We do not interpret *Montgomery* to preclude operation of ORS 138.510(3) or ORS 138.550(2) and (3). Therefore, *Montgomery* does not affect our conclusion, discussed below, that petitioner's successive petition is procedurally barred by ORS 138.550.

persuasive. Accordingly, in its order, the court stated that the superintendent's motion was "sound and well taken under ORCP 47, ORS 138.510(3), and ORS 138.550(3)." The court denied petitioner's motion and granted the superintendent's motion; thereafter, it entered a judgment dismissing the petition with prejudice.

On appeal, petitioner contends that the post-conviction court erred in denying his motion for summary judgment, granting the superintendent's motion, denying him post-conviction relief, and dismissing his petition. Among other things, petitioner asserts that procedural barriers to the petition, including the barrier contained in ORS 138.550, are inapplicable in this case. He also contends, relying on *Miller* and *Graham*, that the Eighth Amendment prohibits the imposition of an effective life sentence for his crimes. The superintendent responds that ORS 138.550(2) controls the outcome in this case. According to the superintendent, that provision precludes a petitioner from relitigating a claim when he has previously litigated that same claim on direct appeal and, because petitioner raised his Eighth Amendment claim on direct appeal, "ORS 138.550(2) bars his claim for relief."[7] Furthermore, even if they are not procedurally barred, the superintendent asserts that petitioner's claims fail on the merits. We agree with the superintendent that ORS 138.550 precludes petitioner from obtaining relief on the ground raised in his petition and, accordingly, we address only that issue.

---

[7] As noted, before the post-conviction court, the superintendent focused his argument on ORS 138.550(3) and the post-conviction court cited that subsection in its order on the motions for summary judgment. However, as the superintendent now points out, "the operative escape clause is found in ORS 138.550(2), because petitioner brought this same claim on direct appeal." But, as the superintendent notes, "[i]rrespective of the proper section, however, each uses identical language." Regardless of the cited statutory subsection, the essentials of the superintendent's argument before this court are the same as the argument he made in support of his motion for summary judgment: Petitioner cannot obtain relief on his successive post-conviction petition because his claim for relief could have reasonably been raised earlier and, in fact, was raised on direct appeal. *See Verduzco v. State of Oregon*, 357 Or 553, 565, 355 P3d 902 (2015) ("The texts of ORS 138.550(2) and (3) express a complete thought."). Furthermore, all the requirements of *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), are satisfied in this case and, therefore, even if we considered the superintendent's argument to be that the post-conviction court was "right for the wrong reason," it would be appropriate to address it on appeal.

As noted, under ORS 138.550(2), if a petitioner "appealed from a judgment of conviction and if the petitioner could have raised a ground for relief on direct appeal, then the petitioner cannot raise that ground for relief in a post-conviction petition 'unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding.'" *Verduzco v. State of Oregon*, 357 Or 553, 565, 355 P3d 902 (2015) (quoting ORS 138.550(2)).[8] Furthermore, under ORS 138.550(3), "all grounds for relief must be raised in the original or amended petition for post-conviction relief unless the post-conviction court 'on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.'" *Id.* (quoting ORS 138.550(3)). Those two statutory provisions "express a complete thought" and, read together, "express the legislature's determination that, when a petitioner has appealed and also has filed a post-conviction petition, the petitioner must raise all grounds for relief that reasonably could be asserted." *Id.* A "failure to do so will bar a petitioner from later raising an omitted ground for relief." *Id.*

In *Verduzco*, the Oregon Supreme Court considered the effect of the prohibition against successive petitions in ORS 138.550(2) and (3). In that case, the petitioner filed a successive petition for post-conviction relief, alleging that counsel in the underlying criminal proceeding had been ineffective for failing to advise him of the immigration consequences of pleading guilty to distribution of a controlled substance, and that his plea was invalid because the trial

---

[8] Under ORS 138.530(1), a petitioner may obtain post-conviction relief by establishing one or more of the following grounds:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

"(b) Lack of jurisdiction of the court to impose the judgment rendered upon petitioner's conviction.

"(c) Sentence in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; or unconstitutionality of such sentence.

"(d) Unconstitutionality of the statute making criminal the acts for which petitioner was convicted."

court had also failed to give him that advice. In an earlier post-conviction petition, the petitioner had alleged essentially the same grounds for relief. His earlier petition had been denied; that judgment was affirmed on appeal and the Supreme Court denied review. Thereafter, the United States Supreme Court decided *Padilla v. Kentucky*, 559 US 356, 366-67, 369, 130 S Ct 1473, 176 L Ed 2d 284 (2010), in which it decided that, "when the deportation consequence [of a conviction] is truly clear, as it was in this case, the duty to give correct advice is equally clear," and the failure to give such advice amounts to a violation of the Sixth Amendment to the United States Constitution. In support of his successive petition, the petitioner contended that he could not have raised his current claims for relief until after the Court announced its decision in *Padilla*. It follows, he concluded, that the change in the law brought his claims within the escape clauses in ORS 138.510 and ORS 138.550. *Verduzco*, 357 Or at 561. Based on its interpretation of ORS 138.550, the court rejected that contention.

Looking at the wording of the statutory escape clause, the Supreme Court in *Verduzco* explained that the use of the word "could" "connotes capability, as opposed to obligation." *Id.* at 566 (internal quotation marks omitted). "That is, the word 'could' asks whether a petitioner 'was capable of' raising the ground for relief [on direct appeal] or in the first petition that later was raised in a second petition. To be sure, the adverb 'reasonably' modifies the phrase, could * * * have raised and could * * * have been asserted." *Id.* (citation omitted). Accordingly, the question under ORS 138.550 is "whether the petitioner reasonably could have raised [the] grounds for relief earlier, a question that calls for a judgment about what was 'reasonable' under the circumstances." *Id.*

"Considering the text, context, and legislative history of ORS 138.550," the Supreme Court concluded that, "whether an issue reasonably could be anticipated and raised does not depend—at least not in a *per se* way—on whether the issue has been definitively resolved by the courts." *Id.* at 571 (internal quotation marks omitted). Instead, quoting our decision in *Long v. Armenakis*, 166 Or App 94, 97, 999 P2d 461, *rev den*, 330 Or 361 (2000), the court explained:

      "'The touchstone is not whether a particular question is *settled*, but whether it reasonably is to be *anticipated* so that it can be raised and settled accordingly. The more settled and familiar a constitutional or other principle on which a claim is based, the more likely the claim reasonably should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstances, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the *claim reasonably could not have been raised*.'"

*Verduzco*, 357 Or at 571 (emphasis in *Long*). Although it recognized that, in other circumstances, resolution of that issue "might be a close call," the court ultimately concluded that it did not need to decide whether the petitioner reasonably could have earlier raised his claims because the petitioner, *in fact*, had raised his constitutional claims in his first petition for post-conviction relief. *Id.* at 572. "Having raised those grounds for relief in his first post-conviction petition," the court concluded that the petitioner could not "claim that he could not reasonably have raised them." *Id.* at 573. Although the petitioner had been unsuccessful in his claim the first time around, "[t]he escape clause does not preclude petitioner from relitigating only those grounds for relief that he was certain he could win when he filed his first post-conviction petition." *Id.* In other words, the fact that, in an earlier appeal or petition for post-conviction relief, a petitioner unsuccessfully raised a ground for relief that would have been successful under later case law does not bring a claim for relief within the escape clauses of ORS 138.550(2) and (3). On the contrary, the fact that a petitioner earlier raised the same ground for relief demonstrates that that ground for relief *could* reasonably have been raised on appeal or in a first petition for post-conviction relief.

      Here, as noted, the superintendent asserts that the petitioner's Eighth Amendment claim was barred under ORS 138.550 because he raised it on direct appeal. Petitioner, for his part, does not assert that he did not raise his claim on direct appeal. Instead, he argues:

    "Petitioner did not fail to timely assert his Eighth Amendment rights in his criminal case. He did so in the tribunal of first resort (the circuit court), he did so in this

court, and he petitioned the Supreme Court to consider it. *** [H]is claim was prescient. But when he timely raised that claim in his criminal case and on direct appeal, it fell on deaf ears. Having timely raised his Eighth Amendment claim on direct appeal, he was statutorily barred from raising it in his post-conviction case. *** [Therefore, p]etitioner <u>does</u> allege 'grounds for relief [that] could not reasonably have been raised in the original or amended petition.'"

(Underscoring and third brackets in original.) In his view, ORS 138.550 should not "present a procedural barrier to an Eighth Amendment claim that Petitioner timely raised at his first opportunity but which was not vindicated by the federal courts until recently, long after the judgment in Petitioner's first post-conviction case was" final.

Petitioner's contention is unavailing. First, as explained in *Verduzco*, ORS 138.550(2) and (3) must be read together and, so read, express the legislature's intent that when a petitioner has appealed and files a petition for post-conviction relief, the petitioner must raise all grounds that could reasonably be asserted. Further, as noted, under ORS 138.550(2), when a petitioner sought direct appellate review, "no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding." ORS 138.510 to 138.680 comprise the whole of the Post-Conviction Hearing Act, *see* ORS 138.680, and govern both first and successive petitions for post-conviction relief. Thus, ORS 138.550(2) plainly provides that a ground for relief that could reasonably have been asserted on direct appeal may not later be asserted in *any* later petition for post-conviction relief. Similarly, a ground for relief that could reasonably have been asserted in a first petition for post-conviction relief may not be asserted in *any* later petition for post-conviction relief. ORS 138.550(3).

Here, as in *Verduzco*, petitioner cannot succeed in asserting that he could not have raised his Eighth Amendment challenge to his sentence earlier because he, *in fact*, earlier challenged the sentence on that basis. Before the trial court at sentencing, he specifically argued that, as a result of petitioner's age and mental status at the time

he committed his crimes, it would violate the federal and state constitutional prohibitions against cruel and unusual punishment to impose a term of imprisonment that would, effectively, amount to a true-life sentence. On direct appeal from the trial court's judgment, he asserted that the sentence violated the federal and state constitutional proscriptions against cruel and unusual punishments. In his brief, petitioner expressly acknowledges that he "timely raised his Eighth Amendment claim on direct appeal." Having raised those arguments before the trial court and on direct appeal, he cannot "claim that he could not reasonably have raised them." *Verduzco*, 357 Or at 573.

As *Verduzco* explains, ORS 138.550(2) and (3) do not only prevent a petitioner from bringing a successive petition for post-conviction relief on grounds that would have been *successful* if raised earlier. Instead, where a ground for relief could reasonably have been raised on direct appeal or in an original or amended petition for post-conviction relief, the petitioner must have raised it. And, where a petitioner did, in fact, earlier raise a ground—even unsuccessfully—ORS 138.550(2) and (3) bar that ground for relief from being raised in a later post-conviction petition.

For that reason, we conclude that the post-conviction court did not err when it denied petitioner's motion for summary judgment, granted the superintendent's motion, denied petitioner post-conviction relief, and dismissed his petition.

Affirmed.