Argued and submitted April 4, 2014, affirmed May 4, petition for review
(S064294) dismissed August 15 (360 Or 237), petition for review (S064214)
denied October 6, (360 Or 422), petition for review (S064439) denied
December 22, 2016 (360 Or 751)

CLINTON CUNNINGHAM,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
06C12230; A149439

373 P3d 1167

Andy Simrin argued the cause for appellant. With him
on the brief were W. Keith Goody and Andy Simrin PC.

Kathleen Cegla, Assistant Attorney General, argued the
cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Garrett, Judge.*

_____

* Garrett, J., *vice* Nakamoto, J. pro tempore.

### GARRETT, J.

This appeal concerns the denial of petitioner's third petition for post-conviction relief. Petitioner was sentenced to death in 1992 following his conviction on two counts each of first-degree rape and aggravated murder, and one count of intentional murder, for the rape and killing of a young woman. Although he confessed to the killing, petitioner has always maintained that he and the victim had consensual sex and that he did not rape her. After filing two unsuccessful petitions for post-conviction relief, as well as a petition for federal habeas corpus relief, petitioner alleged in his third post-conviction petition, among other claims, that (1) the state failed to disclose material, exculpatory evidence in violation of his due process rights under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), (2) the withheld evidence demonstrates that he is "actually innocent" of the crime of rape (and, thus, the crime of aggravated murder predicated upon that rape), and (3) both his trial and appellate counsel were unconstitutionally inadequate for failing to raise the above *Brady* claim.

In a judgment dismissing the petition, the post-conviction court denied petitioner's claims because they were procedurally barred and petitioner had failed to sufficiently prove any of them. One of the procedural bars cited by the post-conviction court was the bar against successive petitions, set out in ORS 138.550(3). The court found that petitioner's claims did not fall within the statute's "escape clause"[1] because those claims could reasonably have been raised in petitioner's first or second post-conviction petitions. Petitioner appeals the judgment, challenging the court's procedural and merits rulings.[2] We write only to address petitioner's second assignment of error, in which he challenges

---

[1] ORS 138.550(3)'s "escape clause" provides an exception to the bar against successive petitions for grounds that "could not reasonably have been raised in the original or amended petition."

[2] Although petitioner asserts that our jurisdiction over the appeal is pursuant to ORS 19.205, which pertains to civil appeals generally, defendant correctly notes that specific authority for an appeal of a judgment on a petition for post-conviction relief is provided by ORS 138.650. *See* ORS 138.650(1) (providing that "[e]ither the petitioner or the defendant may appeal to the Court of Appeals within 30 days after the entry of a judgment on a petition pursuant to ORS 138.510 to 138.680," the Post-Conviction Hearing Act).

the post-conviction court's ruling that petitioner's claims were procedurally barred. As we explain below, the post-conviction court's findings are supported by the record, and the court did not err in determining that the state statutory rule against successive petitions bars all of the grounds that petitioner raised in his third petition for post-conviction relief. Accordingly, we affirm the judgment.

We review the post-conviction court's ruling for legal error. ORS 138.220; *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). In doing so, we are bound by the post-conviction court's findings of fact if they are supported by evidence in the record. *Id.* (citing *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002)). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistent with the post-conviction court's conclusions of law." *Id.*

## I. BACKGROUND

### A. *The Underlying Criminal Proceedings*

We take the relevant historical facts concerning the crimes, as do the parties, from the Oregon Supreme Court's opinion affirming petitioner's judgment of conviction and sentence of death. *State v. Cunningham*, 320 Or 47, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995) (*Cunningham I*).

On October 19, 1991, the victim was driven by her friend, Moyer, to a location north of Coos Bay. The victim intended to hitchhike from there to Eugene. On that date, petitioner and two other men, Allison and Johnson, were traveling in the Coos Bay area in a truck driven by petitioner. Petitioner displayed a knife to Johnson. The three men saw the victim hitchhiking and offered her a ride, which she accepted.

Several hours later, petitioner and the victim went to Moyer's house in petitioner's truck, where the victim introduced petitioner to Moyer. The victim told Moyer that she was going to Eugene with petitioner. Moyer observed

empty beer cans in the truck and noticed that the victim was slurring her words and was unable to walk straight. He tried to talk her out of leaving and wrote down petitioner's name and the truck's license plate number. The victim left with petitioner.

The following day, petitioner went to Johnson's house. Allison was there. When Allison asked petitioner if he "got him some last night," petitioner grinned. He told Allison that he had taken the victim to a friend's house. After breakfast, petitioner and Allison departed for Roseburg. On the way, petitioner threw his knife into a nearby creek, telling Allison that he did not need it anymore.

Meanwhile, that same morning, a motorist found the victim's semi-nude body in a remote wooded area. Testing revealed the presence of spermatozoa and seminal fluid in her vagina. The victim had an abrasion near her perineum, as well as a series of four abrasions along the inside of her thigh, about six inches from her vulva, suggestive of fingernail scratches. An autopsy revealed that the victim had been stabbed approximately 37 times on her face, neck, breasts, back, abdomen, and hands, causing her to die from loss of blood. According to the medical examiner, some of the wounds were "defensive wounds," indicating that she had tried to ward off the attack, and some of the wounds may have been inflicted at a point when she no longer was able to offer any significant resistance. Some of the wounds above and around her breasts suggested "the possibility of sexual mutilation in a perimortem or postmortem context."

The victim's pants and underwear were later found stuffed inside a bag that had been thrown into some nearby bushes. Although the victim's legs were covered with blood, the outside of her pants had little or no blood on them. The state's criminologist concluded that her pants were down or off at the time of the knife attack. Neither the pants nor underwear had sperm or seminal fluid on them.

Following news reports regarding the discovery of the victim's body, Moyer and Johnson each separately contacted the police. Moyer gave the police petitioner's name and the truck's license plate number. Petitioner was arrested several days later.

Petitioner admitted to police that he had driven the truck, picked up the victim, and met Moyer. He also admitted killing the victim, although he denied raping her. According to petitioner's account, shortly after leaving Moyer's residence for Eugene, he pulled off the road, and he and the victim had consensual sex in the truck. They then resumed driving to Eugene. After the victim angered petitioner by repeatedly turning up the volume on the radio, he pulled his truck off the road and told the victim to get out. Petitioner asserted that the victim then grabbed his knife from the dashboard or glove box and came at him, that he took the knife away from her, cutting her hand, but that she continued coming at him and that he kept pushing her away with the knife. Petitioner recalled stabbing the victim a total of "three or four times." He stated that she fell to the ground and was having difficulty breathing and that some of her clothing came off as he dragged her to a ditch. Petitioner said that he then threw her bags into the bushes and later threw his knife into a creek and disposed of his bloody clothing in a dumpster.

Petitioner was indicted on two counts of aggravated murder, ORS 163.095, one count of intentional murder, ORS 163.115, and two counts of first-degree rape, ORS 163.375. The two aggravated murder counts were predicated, respectively, on the allegations of first-degree rape, ORS 163.095(2)(d), and petitioner's attempt to conceal that crime, ORS 163.095(2)(e).

At trial, after the state presented its case-in-chief, petitioner moved for acquittal on the aggravated murder and rape counts on the ground that there was insufficient evidence from which a jury could find beyond a reasonable doubt that petitioner had raped the victim. The trial court denied the motion, and petitioner was convicted on all counts and sentenced to death.

On direct review by the Oregon Supreme Court, petitioner argued, in relevant part, that the trial court erred in denying his motion for judgment of acquittal. According to petitioner, the evidence that he had raped the victim was insufficient because, among other reasons, he offered an alternative, less incriminating version of what had

happened—namely, that the sex had been consensual. The court rejected that argument and affirmed the convictions and sentence of death. *Cunningham I*, 320 Or at 49, 64.

B.  *Petitioner's First Petition for Post-Conviction Relief*

Petitioner first sought post-conviction relief in 1995. Among his various claims, he asserted that his trial attorney, Hendershott, provided inadequate assistance of counsel for failing "to secure and introduce evidence that the victim *** was an active prostitute and had sex with other men close in time to the murder, which would have cast reasonable doubt on whether the petitioner raped the victim by explaining the existence of the abrasion as being caused by her prostitution and/or other consensual sex activity[.]"

At the post-conviction hearing, petitioner provided evidence that his investigator, Harmening, was able to readily obtain records of two prostitution charges against the victim in Canada. One of the charges concerned events that occurred approximately three weeks before the victim was killed. Petitioner also presented a written report by a Canadian lawyer, prepared for the purpose of the post-conviction proceeding, that described details of other Canadian charges against the victim. Harmening testified that the report was obtained "within a month" of making the request to the Canadian lawyer. Petitioner also produced affidavits suggesting that Allison and Johnson had had sex with the victim the day before the drive to Eugene with petitioner.

Hendershott testified at the post-conviction hearing that, although his own investigator in petitioner's criminal trial had obtained information about possible criminal and juvenile charges against the victim in Canada, the investigator had been unable to obtain actual records of those charges because the victim was a minor and the records were confidential.

The post-conviction court denied petitioner relief, and we subsequently affirmed that judgment, concluding that petitioner's trial counsel was not inadequate for failing to investigate and offer evidence relating to the victim's

purported prostitution or sexual activities. *Cunningham v. Thompson*, 186 Or App 221, 236-37, 62 P3d 823, *adh'd to as modified on recons*, 188 Or App 289, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) (*Cunningham II*). We held further that, even if counsel's failure to investigate the victim's background was inadequate, petitioner failed to prove that he was prejudiced as a result of that inadequacy. *Id.* We reasoned that, because the evidence demonstrated that the victim had been sexually assaulted by petitioner—the medical examiner testified that the victim's vaginal abrasion was "recent" and the victim's pants were off, indicating that the sexual encounter occurred simultaneously with the murder—any evidence of her sexual or prostitution activities in Canada "some days or weeks earlier" would not have tended to affect the result of petitioner's trial. *Id.*

C. *Petitioner's Second Petition for Post-Conviction Relief*

In 2003, petitioner filed a second petition for post-conviction relief. Relying on *Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002), petitioner challenged the constitutionality of the "future dangerousness" question in ORS 163.150(1)(B).[3] The post-conviction court dismissed that petition with prejudice in December 2003, and it appears that petitioner did not appeal that judgment.

D. *Petitioner's Federal Habeas Corpus Action*

In 2005, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Oregon, *Cunningham v. Belleque*, No CV-04-0261-KI. Among other claims, he asserted that the prosecutor committed misconduct by failing to turn over exculpatory evidence regarding the victim's propensity for violence, prior prostitution arrests, and suicidal behavior in the weeks and months prior to the murder. The parties agreed to allow petitioner to return to state court to litigate those claims in this post-conviction action; on April 17, 2006, the district

---

[3] Pursuant to ORS 163.150(1)(B), a criminal defendant convicted of aggravated murder may be sentenced to death upon a jury finding that "the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Petitioner's challenge to the constitutionality of that statute is not at issue in this appeal.

court issued a stay to permit exhaustion of petitioner's state court remedy.

E. *Petitioner's Current and Third Petition for Post-Conviction Relief*

On March 6, 2008, petitioner filed his third petition for post-conviction relief, asserting six claims: (1) violation of the Confrontation Clause of the United States Constitution during the penalty phase of trial;[4] (2) violation of his due process rights under *Brady* on the ground that the state failed to disclose information about the victim's "propensity for violence, her prior prostitution arrests, and her suicidal behavior within the weeks and months prior to this crime," and misconduct by the prosecutor for making false or misleading arguments to the jury; (3) inadequate assistance of trial counsel for failure to raise the Confrontation Clause and *Brady* claims; (4) inadequate assistance of appellate counsel for the same; (5) "actual innocence," as that term is used in *Schlup v. Delo*, 513 US 298, 327, 115 S Ct 851, 130 L Ed 2d 808 (1995), of rape and aggravated murder; and (6) cumulative error resulting from the alleged errors underlying the first five claims.

In the petition, petitioner did not dispute that his petition was successive and untimely. He alleged, however, that the Confrontation Clause claims could not reasonably have been raised in an original or amended petition because those claims were based on *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), which post-dated his first two post-conviction proceedings. Petitioner also alleged that "[t]he prosecutorial misconduct claims * * * [were] based on newly discovered evidence that the prosecutor withheld material exculpatory evidence at the time of trial, in violation of the prosecutor's obligations under *Brady* * * *, which duty continued into the original state post-conviction petition."

---

[4] The Confrontation Clause provides that a criminal defendant has the right to confront and cross-examine witnesses against him. In *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), the Supreme Court extended that right to out-of-court testimonial statements introduced at trial, regardless of their admissibility under the laws of evidence.

Defendant moved for summary judgment on the ground that the petitioner's claims were barred by ORS 138.510(3) and ORS 138.550(3) as untimely, successive claims. Petitioner countered that he could not reasonably have raised his *Brady* claim earlier because he had only discovered the state's alleged violation in 2005, when the Federal Public Defender's Office was investigating his federal habeas corpus claims. At that time, investigators Strupp and Stoll interviewed Jennifer Caros (formerly known as Jennifer Johnson), the victim's friend and the person the victim was on her way to see at the time of the murder. According to Strupp and Stoll, Caros informed them that she had spoken to police before petitioner's trial and shared information about the victim's background. Petitioner claimed that the information he obtained from Caros's 2005 interview could not have been obtained at trial or during petitioner's first two post-conviction proceedings.

The post-conviction court granted summary judgment to defendant on petitioner's Confrontation Clause claims (which are not at issue on appeal) but denied summary judgment on petitioner's *Brady* claim and the claims that "flow[ed] from the *Brady* claim." The court found that there were genuine issues of material fact with respect to those claims.

Following a hearing in 2010, the post-conviction court determined that all of petitioner's claims were procedurally barred as untimely and successive because they could reasonably have been raised in his first or second petition for post-conviction relief. The court found further that petitioner's actual innocence claim was not cognizable on post-conviction review.[5]

In support of its decision, the court made the following findings of fact regarding Caros's involvement in the underlying criminal investigation: (1) the prosecution provided petitioner with pretrial discovery, which included information about the victim's background, information

---

[5] Because the post-conviction court determined that petitioner's actual innocence claim was not cognizable, that ground for relief is not reviewable on appeal. *See Dillard v. Premo*, 276 Or App 65, 366 P3d 797 (2016) (where post-conviction petition is dismissed for failure to state a claim, appellate review is precluded).

about her prior arrest for disorderly conduct and giving false information to a peace officer, and information that the victim was on her way to meet Caros at the time of her murder; (2) Caros met with the police before petitioner's arrest; (3) petitioner did not prove that any of Caros's contacts with the police or the prosecution concerned the victim's propensity for violence, prostitution arrests, or suicidal behavior, or that Caros had conveyed to police any material, exculpatory information about the victim's background that was not described or reported in the discovery provided to petitioner; (4) Hostetler, a defense investigator, interviewed Caros during the underlying criminal proceeding; and (5) Caros was reasonably available to petitioner during the underlying criminal proceeding.

The post-conviction court found further that, before trial, Hostetler went to Canada to gather information about the victim's criminal background and learned that the victim had prior arrests and charges for assault, robbery, and prostitution, and that the victim had been suicidal. He provided that information to petitioner and his attorney, Hendershott. The court found that Hostetler's notes provided information "that would have allowed petitioner to obtain more information about [the victim's] 'propensity for violence,' prostitution arrests, and past suicidal behavior." Specifically, the records of the Royal Canadian Mounted Police (RCMP), the Vancouver Police Department (VPD), and the Ministry of Children and Family Development (MCFD) were reasonably available during the underlying criminal proceedings, and petitioner could reasonably have acquired those records by means of a letter rogatory to the courts in British Columbia. The court also found that, before trial, Hendershott conferred with petitioner about presenting the victim's assault arrests to the jury, and that Hendershott used information he gained about the victim's criminal history in Canada in settlement negotiations with the district attorney's office.

The post-conviction court also found that, during the trial, Assistant District Attorney Champion did not make any false or misleading arguments to the jury. The court found that the forensic evidence and petitioner's statements to police supported the prosecution's position and Champion's

argument that the victim had been raped and that she had been murdered during the commission of that rape.

The post-conviction court also found that, during his first post-conviction proceeding, petitioner litigated a claim that "Hendershott failed to secure and introduce evidence that [the victim] was a prostitute." During that proceeding, petitioner "possessed additional information about [the victim's] alleged propensity for violence, prostitution arrests, suicidal behavior, and suspected gang membership in Canada." The court found that, during that proceeding, petitioner possessed or had reasonable access to the following information: (1) an affidavit from Shannon Baldwin in which she averred that Champion had told her after trial that the victim had been a prostitute; (2) an affidavit from Thomas Bernier in which he averred that Champion told him, after trial, that she had obtained information from a woman from another state or country that, if true, "gave her pause as to the appropriateness of the death penalty," and that Champion "was discomfited because she believed that the defense had not uncovered the information for use at trial"; (3) a copy of an April 11, 1991, police report detailing the victim's arrest for disorderly conduct and giving false information to a peace officer; (4) a July 3, 1991, police report detailing the victim's suicide attempt and transport to Willamette-McKenzie Hospital, and listing Caros as the witness who helped police discover the victim; and (5) access to the prosecution's trial files, from which petitioner obtained information that the victim had a criminal history in Canada that included three or four arrests for assault.

The post-conviction court found further that, during petitioner's first and second post-conviction proceedings, records from the RCMP, VPD, and MCFD were reasonably available to petitioner and could have been obtained through a letter rogatory. In addition, during those proceedings, petitioner possessed information or had reasonable access to information concerning the victim's propensity for violence, prostitution arrests, and suicidal behavior. Thus, the court concluded that petitioner could reasonably have raised his current *Brady* claim—and the claims that flowed from his *Brady* claim—in his first or second petition

for post-conviction relief. Accordingly, the court dismissed petitioner's claims as procedurally barred pursuant to ORS 138.510(3), ORS 138.550(3), and *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994). In addition, as noted, the court found that petitioner's "actual innocence" claim was not a cognizable claim from which petitioner could obtain post-conviction relief.

The post-conviction court also determined that, even if petitioner's claims were not procedurally barred, petitioner had failed to sufficiently prove any of his claims. Specifically, petitioner failed to prove that Caros provided any information about the victim's background that petitioner could not have independently obtained as a result of Hostetler's discovery of the victim's criminal and social history in Canada, or that the prosecution or police withheld any material, exculpatory information about the victim's background. Moreover, the "new" information or evidence petitioner presented at the post-conviction proceeding did not establish that he is "actually innocent" of the crimes of first-degree rape and aggravated murder. Finally, the court rejected petitioner's "cumulative error" claim, concluding that, "[b]ecause petitioner failed to prove any single violation of his rights, he did not prove that any 'cumulative' error occurred that prejudiced him."

This timely appeal followed, in which petitioner assigns error to the post-conviction court's conclusions regarding the procedural barring of all of his claims, and the merits of his *Brady*, inadequate trial counsel, and actual innocence claims.[6] Because it is dispositive, we address only petitioner's contention that the post-conviction court erred in determining that his claims were barred as successive pursuant to ORS 138.550(3).

## II. ANALYSIS

ORS 138.550(3) bars successive petitions for post-conviction relief unless petitioner's claims fall under the

---

[6] Petitioner does not challenge the post-conviction court's conclusions regarding the merits of his inadequate appellate counsel and cumulative error claims, nor does he challenge the court's summary judgment ruling on his Confrontation Clause claim.

"escape clause," which requires that the "court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." Because petitioner seeks to invoke the "escape clause" based on newly discovered facts, he has the burden to prove that the "the facts on which [his] new grounds for relief depend[] could not reasonably have been discovered sooner." *Verduzco v. State of Oregon*, 357 Or 553, 566, 355 P3d 902 (2015). To make that showing, petitioner must "demonstrate both that the facts on which the new grounds for relief depend were not known to [him] (or [his] post-conviction lawyer) at the time of [his] first post-conviction proceeding and that it was reasonable for [him] not to have discovered them at that time." *Eklof v. Steward*, 273 Or App 789, 793, 359 P3d 570 (2015). Moreover, ORS 138.550(3) does "not only prevent a petitioner from bringing a successive petition for post-conviction relief on grounds that would have been *successful* if raised earlier. Instead, where a ground for relief could reasonably have been raised * * * in an original or amended petition for post-conviction relief, the petitioner must have raised it." *Kinkel v. Persson*, 276 Or App 427, 444, 367 P3d 956 (2016) (emphasis in original).

Here, the post-conviction court found that petitioner's claims could reasonably have been raised in his first two post-conviction petitions. Petitioner assigns error to that finding, arguing that he could not have raised his claims until 2005, when he first learned of the prosecution's misconduct through an interview of Caros that was conducted by two investigators with the Federal Public Defender's Office during the investigation of his federal habeas corpus action. We disagree.

The necessary inquiry is whether petitioner could have raised his current *Brady* claim, and thus his inadequate counsel claim predicated upon the purported *Brady* violation, during his first post-conviction proceeding. We need not determine whether that *Brady* claim would have been successful if raised in his first petition, but rather whether petitioner could have asserted the claim. *Kinkel*, 276 Or App at 444. Petitioner's *Brady* claim alleges:

"Due process violation, violation of *Brady v. Maryland,* 373 U.S. 83 (1963), Fourteenth Amendment violation, prosecutorial misconduct. The prosecutor failed to turn over exculpatory evidence regarding [the victim] including evidence of her propensity for violence, her prior prostitution arrests, and her suicidal behavior within the weeks and months prior to this crime. Law enforcement agencies conducted numerous interviews with witnesses including Jennifer Johnson (now Jennifer Caros) regarding [the victim's] background, but the prosecution failed to turn that material over to the defense. The prosecution *may have known of the existence of, or actually obtained,* other evidence and records, such as medical records, containing material evidence regarding [the victim], and also failed to turn that information over to the defense. Furthermore, the prosecutor engaged in misconduct when she, amongst other things, made arguments and asked the jury to make inferences at the guilt and penalty phases which she knew or should have known were false or misleading given what the state officers and agencies knew about the victim and her history. The prosecutor's failures to turn over potentially exculpatory evidence and her false and/or misleading arguments to the jury violated Oregon statutory and constitutional law, as well as the prosecutor's obligations under the Fourteenth Amendment of the federal constitution to ensure that the petitioner had a fair trial. The prosecutor's failures also precluded Petitioner from being able to confront the evidence against him and present a defense, and deprived him of a reliable guilt and penalty phase verdict, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, as well as Article I, Sections 10 and 11 of the Oregon Constitution."

(Emphasis added.)

The evidence supports the post-conviction court's determination that petitioner possessed, or had reasonable access to, information needed to raise that *Brady* claim during his first post-conviction proceeding. Petitioner learned during pretrial discovery that the victim, who was born in Vancouver, British Columbia, had a prior arrest record. Based on that information, defense investigator Hostetler traveled to Canada before trial to investigate the victim's criminal history and discovered that she had prior arrests for prostitution, assault, and robbery. Hostetler's

investigation also revealed that the victim had a history of suicidal behavior. Thus, the pretrial defense investigation revealed additional information about the victim's social and criminal background that was available to the police but had not been disclosed by the prosecution during discovery.

Then, during petitioner's first post-conviction proceeding, he introduced evidence that demonstrated that the trial prosecutor was aware that the victim had been a prostitute—namely, the affidavit of Baldwin in which she averred that, during a telephone conversation she had with Champion in 1997, Champion told her that the victim "had been a prostitute and lived on the streets and had no permanent residence[,]" and that "none of that came out in trial because the victim's character and kind of work she did was not important or relevant." *See also Cunningham II*, 186 Or App at 233. The Baldwin affidavit clearly suggests the possibility that Champion was aware of the victim's prostitution activities during the underlying trial but believed that such information was irrelevant to the charges against petitioner. Petitioner therefore possessed information that could support a colorable post-conviction claim that Champion committed a *Brady* violation by withholding potentially exculpatory information about the victim's prostitution activities. *See, e.g., Hanson v. Cupp*, 5 Or App 312, 315, 484 P2d 847 (1971) (affirming grant of post-conviction relief where prosecutor failed to disclose information which, if true and accurate, would have exonerated the petitioner because the prosecutor believed that the volunteered information "was not believable"); *see also Grant v. Roe*, 389 F3d 908, 912 (9th Cir 2004) (prosecutor's failure to "grasp the significance" of favorable evidence does not absolve him of *Brady* obligation; "*Brady* has no good faith or inadvertence defense").

Petitioner also introduced evidence at the first post-conviction proceeding that Champion had learned additional information about the victim's background after trial that she believed had not been discovered by the defense for use at trial. That evidence consisted of an affidavit of attorney Bernier, in which Bernier averred that Champion called him to have an "off the record conversation" after trial, that she told Bernier that she "had had a telephone call from a woman from another state or country during

which Ms. Champion was apprised of information that gave her pause as to the appropriateness of the death penalty for [petitioner] if the information provided were to be true," and that Champion expressed that she "was discomfited because she believed that the defense had not uncovered the information for use at trial." The Bernier affidavit suggests that there was possible material, exculpatory evidence about the victim's background that was available at the time of petitioner's trial and that could have been, but was not, discovered by the defense for use at trial. By exercising due diligence, petitioner could have used this information to formulate a claim that the police or prosecutor knew, or should have discovered, possible *Brady* material prior to trial. *See Carriger v. Stewart*, 132 F3d 463, 479-80 (9th Cir 1997) (in order to comply with *Brady*, the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf); *U.S. v. Price*, 566 F3d 900, 903, 908-09 (9th Cir 2009) (if police detective was aware of witness's prior arrests and convictions and the trial prosecutor "either failed to disclose the information *or* failed to discover that his agent knew of or possessed it, a *Brady* violation occurred" (emphasis in original)).

Moreover, the post-conviction court found that petitioner had reasonable access to records from the RCMP, VPD, and MCFD at the time of his first post-conviction proceeding. Thus, petitioner could easily have obtained more evidence to support his *Brady* claim by obtaining a letter rogatory and by exercising due diligence in investigating what the police or prosecutor knew about the victim's background during the underlying criminal proceeding. *Verduzco*, 357 Or at 566; *Eklof*, 273 Or App at 793. We therefore conclude that the post-conviction court did not err in determining that petitioner could reasonably have raised in his first post-conviction proceeding his current claim that the prosecutor "may have known of the existence of, or actually obtained" "material evidence regarding [the victim]"—a broad claim that does not contain specific allegations of prosecutorial withholding, but alleges generally that the prosecutor suppressed material, exculpatory evidence about the victim.

We reject petitioner's argument that he could not have raised his current claims prior to 2005, when Caros

was interviewed by Strupp and Stoll. To begin, the post-conviction court expressly found that petitioner failed to prove that Caros provided the police or prosecutor with any information that was not already available to the defense through discovery.[7] However, even if Caros had told federal investigators that she gave police information about the victim's background, it was unreasonable for petitioner not to have discovered the alleged *Brady* violation prior to Caros's 2005 interview. *Verduzco*, 357 Or at 566; *Eklof*, 273 Or App at 793. As the post-conviction court found, Caros was reasonably available to petitioner and had, in fact, been interviewed by a defense investigator during the investigation of the underlying criminal proceeding. Thus, through due diligence, petitioner should have been able to discover the alleged *Brady* violation involving Caros prior to 2005.

Moreover, as discussed above, petitioner possessed sufficient information to assert a broad claim that Champion failed to disclose information about the victim's criminal and social background long before 2005. Petitioner cannot avail himself of ORS 138.550(3)'s escape clause merely because Caros's 2005 interview may have provided additional or superior information to support a *Brady* claim that was already reasonably available to petitioner during his first post-conviction proceeding. *See Freeman v. Gladden*, 236 Or 137, 139, 387 P2d 360 (1963) ("Petitioner confuses new or additional *evidence* with new or additional *grounds* in attempting to exclude the application of ORS 138.550(2)." (Emphases in original.)); *see also Verduzco*, 357 Or at 565 (analyzing the escape clauses of ORS 138.550(2) and (3) identically because the two subsections "express a complete thought"). The 2005 Caros interview merely provided petitioner with new evidence to support an already available ground for post-conviction relief.

We also reject petitioner's argument that his procedural default should be excused based on the inadequacy of

---

[7] That finding is supported by evidence in the record. Indeed, in her July 14, 2008, affidavit, Caros stated that she "only spoke to police about the facts and circumstances of the days surrounding the incident," and that her conversation with the prosecutor's office was "only to confirm who [she] was, and about [her] availability." She specifically denied telling Strupp and Stoll that she had spoken to the police or prosecutor about the victim's "behaviour, alcohol use, or aggressive or violent behaviour while intoxicated."

his former post-conviction counsel. As defendant correctly asserts, that contention is unpreserved because petitioner never raised the issue or presented any argument regarding the inadequacy of former counsel in the current post-conviction proceeding. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). And, in any event, we have held that the adequacy of post-conviction counsel may not be challenged in a later post-conviction proceeding. *See Page v. Cupp*, 78 Or App 520, 523, 717 P2d 1183, *rev den*, 301 Or 338 (1986) (claims barred as successive under ORS 138.550(3) not reviewable based on allegation that the petitioner's former post-conviction attorney was inadequate for failing to raise them in prior proceeding); *see also Miller v. Baldwin*, 176 Or App 500, 506-08, 32 P3d 234 (2001) (adequacy of post-conviction counsel may not be challenged in a later post-conviction proceeding).

Petitioner's reliance on *Martinez v. Ryan*, ___ US ___, 132 S Ct 1309, 182 L Ed 2d 272 (2012), is misplaced. In *Martinez*, the Supreme Court held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at ___, 132 S Ct at 1320. *Martinez* applies narrowly to procedurally barred claims of ineffective trial counsel in federal habeas corpus petitions, where barred claims will only be reviewed upon demonstration of cause and prejudice for the procedural default, or that a failure to review the claim will result in the fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 US 722, 750, 111 S Ct 2546, 115 L Ed 2d 640 (1991). However, the rule prohibiting successive post-conviction petitions pursuant to ORS 138.550(3) may only be overcome when a petitioner raises "grounds for relief * * * which could not reasonably have been raised in the original or amended petition," a standard that differs significantly from the cause-and-prejudice and fundamental-miscarriage-of-justice tests under federal law. We therefore decline to extend the Supreme Court's rationale in *Martinez* to post-conviction claims that are barred as successive, and

conclude that petitioner may not avail himself of the escape clause based on his claim that former post-conviction counsel was inadequate.

In sum, the post-conviction court did not err in dismissing petitioner's claims as improperly successive pursuant to ORS 138.550(3).

Affirmed.